## JULIA A. RADIGAN *vs.* STEPHEN F. JOHNSON.

### Suffolk.    March 17, 1899. — July 1, 1899.

### Present: HOLMES, MORTON, LATHROP, BARKER, & HAMMOND, JJ.

#### *Conversion — Evidence — Pledge — Lien.*

In an action for the conversion of certain horses, which had been boarded with the defendant, a stable keeper, by the plaintiff, who signed an instrument, by which he relinquished to the defendant all claim on the horses " until his claim of" a sum named "for board and care is paid in full, which I agree to do by weekly payments of " a certain sum, oral evidence is inadmissible to show that the defendant agreed that, if the plaintiff would have the instrument executed and handed to him, he would then permit the plaintiff to go on using the horses in the ordinary course of business.

If the owner of horses which have been boarded with a stable keeper executes an instrument by which he relinquishes to the latter all claim on the horses " until his claim of " a sum named "for board and care is paid in full, which I agree to do by weekly payments of " a certain sum, the transaction is in the nature of a pledge of the horses as security for the payment of the sum named at the weekly rate specified, and upon the failure of the pledgor to pay as agreed, the whole debt becomes due, and the pledgee can enforce his security by a sale of the property; and whether, by accepting payments after a breach of the agreement, he has waived his right to insist upon the payment of the whole debt, is a question for the jury in an action for conversion of the property.

TORT, for the conversion of certain horses and carriages, with a count in contract for the alleged breach of an agreement. Trial in the Superior Court, before *Richardson,* J., who allowed a bill of exceptions, in substance as follows.

There was evidence that the plaintiff was the owner of certain horses and carriages used in conveying passengers in the city of Boston; that the defendant was a livery-stable keeper; and that on October 9, 1897, the plaintiff was indebted to the defendant in the sum of $439.99 for board and care of her horses.

The following instrument, which was executed on October 11, 1897, was put in evidence: "Boston, October 9, 1897. I relinquish to S. F. Johnson all claim on the three horses (3), one Kimball landau, and one Bennett coupé now in his possession, until his claim of $439.99 for board and care is paid in full, which I agree to do by weekly payments of $15. The board from this (October 9) date to be paid weekly, E. F. Radigan, Julia A. Radigan."

On October 10, 1897, the defendant asserted a claim of statutory lien upon the horses, and refused to allow them to be taken from the stable. Thereupon Edward F. Radigan, the husband of the plaintiff, called upon the defendant, and testified that in the conversation which then took place the defendant said, " If you will have this release of the horses drawn, and signed and handed to me, I will then permit you to go on with the use of your horses in the ordinary course of business." The plaintiff contended that that was the consideration for the agreement, which was not stated in the agreement.

This evidence was objected to, but the judge admitted it; and the defendant excepted.

After the defendant had detained the horses, and before the signing of the paper above set out, the plaintiff had a conversation with the defendant, regarding which she testified as follows: " The first remark I made to him was that he was the last one I thought would stop me from making a living. He said he did n't intend to stop me, but he thought it better between him and myself if I would sign over all my horses, carriages, and stuff that was in his stable ; he would make out this paper if I would sign it, and he would protect me. I could continue in business just the same."

The defendant objected to this evidence, but the judge admitted it ; and the defendant excepted.

The witness further testified that when she signed the paper the defendant said to her, " Now, Mrs. Radigan, go ahead, take the horses. You have seven months to pay that in. That ain't very hard " ; that thereafter she continued using the property as she had before the horses were detained; and that almost immediately she made default in her payments.

Concerning this interview the defendant testified as follows:

" The plaintiff said, ' Mr. Johnson, I have got the money right here. I can pay that bill, but I don't wish to.' I asked her if she would tell why not. ' Well,' she said, ' if I pay that bill Mr. Radigan will not work. I want him to go on to a team and earn a living. I also may wish to collect money which is owing to us, and if I settle the bill he will settle back and won't do it'; and I told her that that was a pretty good policy or something to that effect, and I should like to help her in any way I could, but I needed money bad, and I believe she asked me what could be done, and I told her I thought if she could insure my bill by giving me some hold on the property, something so that I should be safe, we could fix it so she could take her teams out and continue her business."

On cross-examination, the defendant testified that the understanding and agreement was that the plaintiff should release the horses to him by the paper referred to, if he would let her go along in her business and pay by the week.

The plaintiff's horses and carriages continued to be kept at the defendant's stable after the execution of the foregoing instrument, and continued to be used by her as before in the transaction of her business, being returned each night to the defendant's stable.

On October 19, the plaintiff paid the defendant $15, for which the defendant made out a receipt on an ordinary blank form running as follows: " Received from Mrs. E. F. Radigan, Fifteen $\frac{00}{100}$ Dollars for use of horses and carriages. $15.00."

On October 25, 1897, the plaintiff paid $15, on October 29, 1897, $100, and on November 10, 1897, $15, taking therefor receipts reading substantially as that above set forth.

On December 16, 1897, the plaintiff paid $25 and took therefor a receipt reading " on account " instead of " for use of horses and carriages." The total of these payments represented by receipts upon blank forms was $170.

The defendant did not render bills for payments due on the $15 instalments, or " old board " so called, part of the agreement of October 9, but he did render bills for board of the horses subsequently to that agreement, which bills were always in the following form: " Mrs. E. F. Radigan, to S. F. Johnson, Dr. To board,    days. Storage,    days."

Between the words " board " and " days " on each bill was written the number of days unpaid for, and between the words " storage " and " days " a pen mark was drawn indicating that there was no charge for storage.

From October 9, 1897, to January 15, 1898, the plaintiff continued to keep her property at the defendant's stable, and during that time paid $156 on that account, leaving a balance due on January 15, 1898, for the " new board " so called, of $128.

The amount of $156 was in no part represented by the receipts aggregating $170 heretofore spoken of. On January 21, 1898, nothing further having been paid by the plaintiff, the defendant again asserted a claim of statutory lien, and refused to allow the plaintiff's property to be taken from the stable. On February 5, 1898, the husband of the plaintiff, acting for her, paid to the defendant $100, and received therefor a receipt upon an ordinary blank form reading for $100 on account; and at that time asked permission to take out a horse and carriage, which permission was refused by the defendant, who, at that time, stated that the whole bill must be settled in full before he would permit the property to be taken from his stable. If the payment of $100 was added to the payment of $170 hereinbefore mentioned, for which receipts upon blank receipt forms were given, reading either " for use of horses and carriages " or " on account," the total sum paid would amount to $270; and if applied by weekly payments under the agreement of October 9, 1897, would represent eighteen weeks, covering a period from October 9, 1897, to February 13, 1898.

On February 11, 1898, the plaintiff and the defendant computed the amount due on the " new board," so called, as follows: Taking the amount due January 15 at $128, and adding thereto four weeks' board to and including February 12, amounting to $72, made a total amount due upon that account of $200, and the defendant deducted therefrom the sum of $15 for such use as had been made of the horses since they had been detained by him, January 21, 1898; and upon this basis of computation the defendant would be entitled to $185, for " new board " up to and including February 12, 1898. Thereupon the plaintiff tendered to the defendant the sum of $185, stating that it must be applied only in payment of the board of the horses since

October 9, 1897, and asked for a receipt. The defendant refused to give a receipt for the $185, claiming that the whole amount for both the new and old board had become due.

Upon cross-examination, the plaintiff testified that she did not know when it was that she got behind on the payments of $15 a week, and that the last bill, which she received on January 15, 1898, showed $128 due for the new board.

On cross-examination, the defendant testified that he recognized the bill of January 15, 1898; that he there charged for board of horses, nothing else, $128; that up to February 5 the bill would be $182; that there would be $18 to and including February 12, and taking out $15 for use of the horses would make $185 up to and including that date; that the $15 part of the agreement of October 9 had been all paid before a certain interview of February 11, at the office of his counsel, although the instalments had not been paid regularly when due; that some instalments which were due had not been paid when the horses were detained on January 21, 1898; that, at the time of the interview on February 11, when the $185 was paid, the " new board " part of the agreement of October 9 was all paid, and a day or two in advance; that he did not remember hearing his attorney say that he claimed to own the property in question, but did remember hearing the plaintiff's attorney ask, " If you own these horses, why are you giving us $15 credit for the use of them ? "; that the words in the receipts, "for use of horses," did not signify that he claimed to own the horses; that if the $185 were applied upon account for new board, it would fully discharge that obligation; that if the $270 were applied upon the amount due under the agreement at the rate of $15 a week, it would have paid that account to and including February 12; and that he claimed the balance due to him upon the whole account to be $169.99, which amount is arrived at by taking the $270 paid from the $439.99 mentioned in the original agreement.

On February 14, 1898, the defendant delivered to the plaintiff all her property excepting that covered by the instrument of October 9, 1897.

On June 10, 1898, the defendant served upon the plaintiff the following instrument, but nothing was ever done under it

after service : "Boston, June 10, 1898. To Julia, A. Radigan and E. F. Radigan. You are hereby notified that as you have failed to perform the obligations of your agreement of October 9, 1897, I intend to enforce payment and performance of said agreement by sale of the property pledged, to wit: three horses, one Kimball landau, and one Bennett coupé. Stephen F. Johnson."

At the interview of February 11, 1898, the plaintiff demanded of the defendant the property mentioned in the agreement of October 9, 1897, and the defendant refused to comply with the demand.

At the conclusion of the evidence, the defendant asked that a verdict be ordered for him. The judge refused so to do; and the defendant excepted.

The jury returned a verdict for the plaintiff, and, in answer to a question submitted to them, found that there was no conversion of the property not covered by the agreement of October 9. The defendant alleged exceptions.

*A. H. Russell*, (*E. M. Moore* with him,) for the defendant.

*W. M. Noble*, for the plaintiff.

MORTON, J. The testimony that was offered by the plaintiff for the purpose of showing that the defendant agreed that if the plaintiff would have the release drawn and signed and handed to him he would then permit her to go on using the horses in the ordinary course of business was a plain attempt to engraft upon the written contract an oral agreement contemporaneous with it and was inadmissible. It tended to vary the contract as written by introducing into it another stipulation. This could not be done under the guise of showing what the consideration was. *Pike* v. *McIntosh*, 167 Mass. 309. *Knowlton* v. *Keenan*, 146 Mass. 86. *Simanovich* v. *Wood*, 145 Mass. 180. *Howe* v. *Walker*, 4 Gray, 318.

We think that the transaction was in the nature of a pledge of the property described in the contract as security for the payment of the sum named at the rate of $15 per week. *Thompson* v. *Dolliver*, 132 Mass. 103. *Walker* v. *Staples*, 5 Allen, 34. Upon the failure or neglect of the plaintiff to pay as agreed, the whole debt became due, and the defendant could enforce his security by a sale of the pledge (*Upham* v. *Smith*,

7 Mass. 265, *Reed* v. *Stoddard*, 100 Mass. 425, 427); or he could waive the breach of the agreement, and if he did so, and the plaintiff afterwards paid the instalments as they fell due and in other respects observed the conditions of the pledge, a sale by the defendant would constitute a conversion. Whether the defendant by accepting the amounts which were paid after he demanded a settlement in January, 1898, waived his right to insist upon the payment of the whole debt, was a question for the jury under suitable instructions.

The defendant also contends that he had a lien as stable keeper, and that, therefore, this action cannot be maintained. But so far as the exceptions show he dealt with the property as pledgee, and not by virtue of any lien which he had as stable keeper. We are in doubt, as the exceptions stand, how far, if at all, the matter of the lien and how it would affect the rights of the parties was brought to the attention of the court. At another trial the facts may appear more fully, and we therefore do not deem it wise to discuss the matter now.

*Exceptions sustained.*