JULIA A. RADIGAN *vs.* STEPHEN F. JOHNSON.

Suffolk.   March 20, 1900. — June 21, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, BARKER, & LORING, JJ.

*Conversion — Pledge — Lien — Waiver.*

In this case, which was an action for the conversion of certain horses which had been boarded by the plaintiff with the defendant, a stable keeper, there was no evidence which would warrant a finding that the defendant said or did anything that constituted a waiver of his right to insist upon the whole amount due him under the written agreement in evidence, and to hold the property as security therefor.

The fact that, while attempting to arrive at a settlement of the amount due for the board of the plaintiff's horses in the defendant's stable, the latter's counsel may have asserted for the moment a larger right than he could successfully maintain would not of itself constitute a conversion by the defendant, it being clear that he was entitled to possession as pledgee.

If the owner of horses which have been boarded with a stable keeper executes an instrument by which he relinquishes to the latter all claim on the horses "until his claim of" a sum named "for board and care is paid in full, which I agree to do by weekly payments of" a certain sum, what was said after the instrument was signed, in regard to the use by the owner of the property, would not affect the right of the stable keeper to hold it as pledgee for any balance that might be due.

TORT, for the conversion of certain horses and carriages, with a count in contract for the alleged breach of an agreement. After the former decision, reported 174 Mass. 68, the case was tried in the Superior Court, before *Hopkins,* J., who allowed a bill of exceptions, in substance as follows.

There was evidence that the plaintiff was the owner of certain horses and carriages used in conveying passengers in the city of Boston ; that the defendant was a livery-stable keeper, at whose stable the plaintiff kept her horses and carriages ; and that on October 9, 1897, the plaintiff was indebted to the defendant in the sum of $439.99 for board and care of her horses.

On October 10, 1897, the defendant asserted a claim of statutory lien upon the horses in question, and refused to allow them to be taken from the stable.   On October 11, the parties signed an instrument, of which the following is a copy: " Boston, October 9, 1897.   I relinquish to S. F. Johnson all claim on the three horses (3), one Kimball landau, and one Bennett coupé,

now in his possession, until his claim of $439.99 for board and care is paid in full, which I agree to do by weekly payments of $15. The board from this (October 9) date to be paid weekly. E. F. Radigan, Julia A. Radigan."

The plaintiff testified that after she had signed the above paper the defendant told her not to worry, that she had seven months to pay the bill; that she could " have the horses and continue just the same," and he would do all he could to help her; that if he needed more money, he would ask her for it, and she said that if she could let him have it she would give it to him; that he then told her husband to get his horses and go to work; that her husband did so, and that beginning with that evening there was no change in her method of using the horses, but when she wanted them she took them, just the same as ever.

The defendant, on cross-examination, testified that, after the paper of October 9 was signed, the plaintiff went on in her business in the usual way; and that he did not interfere with or exercise any control over these horses and carriages until he detained them again on January 21, 1898, as hereinafter stated.

The defendant further testified, on re-direct examination, that the horses and carriages were brought back to his stable every night; that his understanding was that, under that paper, he could hold the horses and carriages until his bill was paid; and that he was still holding them under that paper.

The plaintiff continued to keep the horses and carriages in question at the defendant's stable, and the payments of $15 a week were treated separately from the newly accruing account for board of the horses. The plaintiff from time to time paid money to the defendant, and it was agreed that he was allowed to apply these payments as he chose either to the old or to the new board. No bills were rendered on account of the old board after October 11, but bills were regularly rendered for the new board. The first payment applied upon the old board was made on October 15, 1897, amounting to $15; the second, on October 25, of the same amount; the third, on October 29, of $100; the fourth, on November 10, of $15; and the fifth, on December 16, of $25, making a total of $170. The receipts for these payments read, " Received —— dollars for use of horses and carriages," excepting the last two, which read, " On account."

The plaintiff further testified that she had never paid the defendant the whole amount of the bill of October 9, 1897.   After October 11, the plaintiff paid the bills for the new board from time to time; but after a while, payment on that account became overdue, until, on January 15, 1898, the sum so overdue amounted to $128.

On January 21, 1898, the payments of $15 a week on account of the old board were also behind, the above named sum of $170 only having been paid, and on that day the defendant refused to allow the property mentioned in the instrument of October 9 to be taken from his stable, and the plaintiff has never had possession of any of the property since; but the defendant testified that it has since been in his possession, and that he was holding it under the agreement and had never sold the same, either under a claim of pledge or of a stable-keeper's lien.

The plaintiff testified that she got $100, and sent it to the defendant on February 5, 1898, to pay the board.   It further appeared that upon receiving this sum the defendant instead of applying it to the new board, gave the plaintiff's husband a receipt for it upon account, using the same sort of receipt blank that he had used in all cases where he had applied payments to the old board.

On re-direct examination, the plaintiff testified as to the payments made by her as follows: " Q. Will you explain what you mean when you say you were not behind?  A. After I had signed that paper the defendant came to me and asked me for a hundred dollars; I gave it to him.   He said he would not push me weekly, as I had never paid a bill before weekly; my bills were always paid before monthly."

Adding the payment of $100, made on February 5, to $170, then already paid on the old board, made the amount of $15 per week for eighteen weeks, and thus applied paid the old board account to and including February 12, 1898.

Edward F. Radigan, husband of the plaintiff, testified that after the paper of October 9 had been signed and delivered to the defendant, the latter said to him that he could go ahead and take the carriages out and go on with the business; that thereafter he did take out the horses and carriages and continued so to do until January 21 following, when they were stopped again;

that he did nothing about it until a week or so afterwards, when the defendant called upon him, and the witness said that he was trying to raise some money and would see the defendant as soon as he got it, to which the defendant replied, " Very well, every little helps ; " that subsequently, on February 5, he received $100 from his wife and took it to the defendant on the day following the conversation referred to and gave it to the defendant, telling him to apply it on account ; and that, after the defendant had taken the money and given a receipt for it on account, the witness asked him if he could take out one of the teams, and the defendant replied, " No, you can't have any carriage until that board bill is paid, and I want that paid, and then you can take him out of here and take him where you like."

Radigan testified further that he was present at an interview which took place at the office of the defendant's attorney on February 11 ; that there were present the attorneys for both parties, Mr. Davis, an attorney, and the defendant ; that the parties there figured what was due on the board bill ; that the defendant was paid just exactly what was agreed to be due on account of the new board at that time and a day or two in advance ; and that with reference to the $270 which had been paid on account of the $15 per week instalments on the old board, the defendant's attorney had said, in answer to an inquiry whether or not all payments due under the agreement of October 9 had been paid, " Well, whether or not all the payments due have been made is a matter of computation."

In regard to what transpired at this interview, after that answer, the witness further testified that he remembered that the plaintiff's attorney said, " Now, I understand we can take the carriages," and " they said we could n't ; they claimed to own them ; " that he remembered the words of the defendant's attorney were, " Furthermore, we now notify you that we own these carriages and horses " ; and that the defendant was then present, and his attorney turned to him and said, " You understand, Mr. Johnson, that you refuse to let Mr. Radigan have the three horses and two carriages."

On cross-examination, the witness testified, among other things, as follows :

" *Q.* Now, do you remember at my office that Mr. Noble (the

plaintiff's attorney), said, 'I understand that Mrs. Radigan has permission to take all her property excepting what is mentioned in the paper that we call the mortgage,' and that I said, ' You have a right to take everything but the three horses, landau, and coupé, and we want you to take them at once, although of course you have a right to leave them here to-morrow ' ? *A.* Yes, sir. — *Q.* Now, do you remember Mr. Noble saying, 'Now, we want to know whether or not you claim anything to be due under your paper of October 9,' and that I said, ' We claim that the sum of $169.99, that is, the whole balance, is due us, and is due us to-day' ? *A.* Yes, sir."

Arthur S. Davis, a witness called by the plaintiff, testified that he was an attorney at law, associated with the plaintiff's attorney in practice, and that he had been requested on February 11 to go to the office of Mr. Russell, the defendant's attorney, in relation to this case, and did so. As to what there took place, he testified that, upon the plaintiff's attorney asking Mr. Russell if there was any doubt about all the amounts that were due under the agreement of October 9 having been paid, Mr. Russell replied that $270 had been paid under that, but the payments had not been regularly made ; that the plaintiff's attorney then called his attention to the fact that there were just eighteen weeks between October 9 and February 12, and that $270 made just eighteen payments at $15 a week, and he replied that that amount had been paid, and whether all that was due had been paid was a matter of computation, that the inference was correct if the payments were applied that way ; that the matter of the board of the horses since October 9 was then taken up, and the plaintiff's attorney asked Mr. Russell practically what the amount due was, and he stated that there was $182 due on the previous Saturday, this conversation occurring on a Friday, that on the following day, February 12, there would be due another week's board at $18, but that the horses had earned $15 during that week, and he gave the plaintiff credit for that $15, leaving $3 to be added to the $182, making $185 due for board up to and including February 12; that the plaintiff's attorney then took out a package of money, saying to Mr. Russell that it contained $185, and that he paid it entirely on the new board, that is, the debt due under the agreement of

October 9, and handed the money to him, which he counted and acknowledged to be $185; that the plaintiff's attorney then said, " Now, we understand that Mrs. Radigan has a right to take out all her property, and that it is to be taken out under that agreement of October 9, just as it has been taken out ever since the dealings of the parties began under it " ; that Mr. Russell said, " That is, you want to take them when and as you please " ; that the plaintiff's attorney replied, " No," reiterating the statement that it was to be taken out only for use in the ordinary course of business, and as it had always been done under the agreement of October 9 ; that Mr. Russell then said, " We decline to let you take them at all," and, " furthermore, we claim to own this property " ; that the plaintiff's attorney then asked him, " If that is so, how is it that you are charging us board ? " and Mr. Russell replied, " Well, no matter what I have said, we claim to own the property ; we shall continue to hold it until it is taken away from us by process of law " ; and that Mr. Russell then turned to the defendant and said, " You understand, Mr. Johnson, that Mrs. Radigan demands this property of you, and that we refuse to let her have it," and the defendant said " Yes."

The defendant requested the judge to rule that on all the evidence the plaintiff was not entitled to recover.    The judge so ruled, and directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions.

*W. M. Noble*, (*A. S. Davis* with him,) for the plaintiff.

*A. H. Russell*, (*E. M. Moore* with him,) for the defendant.

MORTON, J.    This case was before us in the 174 Mass. 68, on the defendant's exceptions, which were sustained on the ground that the question " whether the defendant by accepting the amounts which were paid after he demanded a settlement in January, 1898, waived his right to insist upon the payment of the whole debt, was a question for the jury under suitable instructions."    The case comes here now on exceptions by the plaintiff to a ruling by the court, directing, at the defendant's request, a verdict for him.

Taking the view of the appropriation of the payments most favorable to the plaintiff, it is clear that, after deducting the payments that were made on February 5 and February 12, there

remained a balance due the defendant under the agreement of October 9 of $169.99. It is also clear that when the defendant stopped the horses and carriages on January 21, the plaintiff was in arrear on the board that had accrued since October 9, and also on the weekly instalments which she had agreed to pay under the agreement of October 9. The defendant had a right to insist on the payment of the whole amount due under that agreement and to hold the horses and carriages as security therefor, and without going into detail we deem it enough to say that we do not discover in what took place in regard to the payment of the $100 on February 5 and the $185 on February 12 any evidence that would warrant a jury in finding that the defendant said or did anything that constituted a waiver of his right to insist on the payment of the whole amount due him under the agreement of October 9, and to hold the horses and carriages as security therefor. On the contrary, the only fair inference, we think, is that, notwithstanding those payments and however they might be applied, the defendant insisted, as he rightfully could do, that the plaintiff should pay all that was due and then take her horses and carriages away. The defendant, having a right as pledgee to the possession of the horses and carriages, could not, of course, be guilty of conversion so long as he held possession in virtue of that right. Whether he did not also have a stable-keeper's lien upon the horses notwithstanding the agreement of October 9 for any balance that might remain, we do not deem it necessary to consider. It would seem that he had none upon the carriages.

The fact that, while attempting to arrive at a settlement, counsel for the defendant may have asserted for the moment a larger right than he could successfully maintain, would not of itself constitute a conversion by the defendant, it being clear that the defendant was entitled to possession as pledgee.

What was said after the agreement of October 9 was signed in regard to the use of the property did not affect the right of the defendant to hold it as pledgee for any balance that might be due, as the plaintiff in substance admits on his brief in his form of stating the question.

We think that the entry must be, exceptions overruled.

*So ordered.*