WILLIAM S. HALL, trustee, *vs.* JOSEPH B. HALL & others.

Suffolk. March 20, 1911. — June 21, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Devise and Legacy. Words,* "Previous decease," "Then living," "Survivors."

The will of an unmarried woman contained the following provision: "Upon the death of both my said brothers, and the said J. [one of the brothers] leaving no issue then living, I give, devise and bequeath all the then remaining trust property and estate, with any accumulations, in three equal portions, one portion to be divided equally between my cousins, J. M. and S., children of my uncle, W.; one portion to be divided equally between my cousins, H. and G., children of my aunt, Caroline, and one portion to my uncle, the said T., to them, their heirs and assigns respectively forever. In case of the previous decease of either of my said cousins or of my uncle, T., leaving issue then living, I direct that the share of such deceased cousin, or of my said deceased uncle, be paid over in equal portions by right of representation to such issue. If there be no such issue then living such share shall be divided equally among the survivors of my said cousins and said uncle, or the whole to be paid over to the survivor of them." One of the brothers died before the testatrix, leaving no issue. The other brother enjoyed the income of the trust fund for twenty years and then died, leaving no issue. During the lifetime of this brother the testatrix's cousin H. died, leaving no issue, and about a month later the testatrix's uncle T. died, leaving issue. Upon a bill by the trustee for instructions, it was agreed that the issue of the deceased uncle took his share, and the question was whether under the last sentence of the paragraph quoted the issue of the uncle could share in the deceased cousin's share. *Held,* that in the phrase "In case of the previous decease of either of my said cousins" the word "previous" meant previous to the time of distribution at the death of the survivor of the testatrix's two brothers, and that in the later clause, "If there be no such issue then living such share shall be divided equally among the survivors of my said cousins and said uncle" the words "then living" and "survivors" referred also to the time of distribution, and that, as the uncle was not at that time a survivor, his issue must be excluded in the distribution.

BILL IN EQUITY, filed in the Supreme Judicial Court on November 17, 1910, by the trustee under the will of Annie H. Parker, late of Boston, for instructions.

The case was heard by *Hammond,* J. The clause of the will in regard to which instructions were sought is quoted in the opinion. The two brothers of the testatrix there mentioned were J. Brooks Parker and Charles A. Parker. The testatrix died on October 1, 1890, and her will was proved on October 27, 1890.

The brother J. Brooks Parker died on March 5, 1890, during

the lifetime of the testatrix, leaving no issue. The other brother, Charles A. Parker, having received the entire net income during his life, died on October 11, 1910. The cousin, Herbert H. Eustis, died on February 21, 1903, leaving no issue. The uncle, Thomas B. Hall, died on March 22, 1903, leaving issue, two daughters, the defendants Emily D. (Hall) Meyer and Minna B. Hall. The defendants Joseph B. Hall, Maria H. Hall, Susan B. Horton, (formerly Hall,) and George D. Eustis were the cousins named in the will. It was not disputed that the share of the uncle Thomas B. Hall in the remainder went to his two daughters, Emily D. Meyer and Minna B. Hall, and the only question in the case was in regard to the disposition of the share of the cousin, Herbert H. Eustis: Whether the share of this cousin, (who died just before his uncle Thomas B. Hall,) went in fourths to the other now surviving cousins named in the will, namely, to George D. Eustis, Joseph B. Hall, Maria H. Hall and Susan B. Horton, or in fifths, four parts going to the cousins just named and one part going, through the uncle Thomas B. Hall, to his two daughters, Emily and Minna.

The justice reported the case for determination by this court as follows: " I decided that the trustee should divide the share of Herbert D. Eustis, deceased, into five equal parts, and pay one of such parts to each of the four cousins of the testatrix, Joseph B. Hall, Maria H. Hall, Susan B. Horton, and George D. Eustis, and one such part to her cousins, Emily D. Meyer and Minna B. Hall, issue of Thomas B. Hall, uncle of the testatrix; and at the request of counsel for Joseph B. Hall, Maria H. Hall, and Susan B. Horton, I report the case for the consideration and decision of the full court."

*F. Rackemann*, for Joseph B. Hall, Maria H. Hall and Susan B. Horton.

*J. Abbott*, for Minna B. Hall and Emily D. Meyer.

Rugg, J. The testatrix, a spinster, by her will gave the residue of her estate in trust to pay the income to her brothers for life and the survivor with remainder to the issue of one of them. Both have died without issue. The clause of her will operative in this contingency is " Upon the death of both my said brothers, and the said J. Brooks leaving no issue then living, I give, devise and bequeath all the then remaining trust property and

estate, with any accumulations, in three equal portions, one portion to be divided equally between my cousins, Joseph B., Maria H. and Susan B. Hall, children of my uncle, Wm. P. Hall; one portion to be divided equally between my cousins, Herbert H. and George Dexter Eustis, children of my Aunt, Carolina B. Eustis; and one portion to my uncle, the said Thomas B. Hall, to them, their heirs and assigns respectively forever. In case of the previous decease of either of my said cousins or of my uncle, Thomas B. Hall, leaving issue then living, I direct that the share of such deceased cousin, or of my said deceased uncle, be paid over in equal portions by right of representation to such issue. If there be no such issue then living such share shall be divided equally among the survivors of my said cousins and said uncle, or the whole to be paid over to the survivor of them."

The last surviving brother died in 1910. The cousin, Herbert H. Eustis, died in February, 1903, leaving no issue, and all the other cousins named were alive at the termination of the life estates. The uncle, Thomas B. Hall, died in March, 1903, leaving two daughters who are still living, and who were of mature years when the will was executed. The question is as to the disposition of the share, to which the cousin, Herbert H. Eustis, would have been entitled, had he lived until after the death of the brothers. The conflicting contentions are on the one side that it is to be divided into fourths among the surviving cousins named in the will, and on the other side that it is to be divided into fifths, and one fifth given to each of such cousins and the other fifth to the two daughters of the deceased uncle, Thomas B. Hall. The controversy relates wholly to the point of time when the gift over on the decease of a cousin takes effect, whether at the death of the cousin or at the termination of the life estates.

It is urged in favor of the division into fifths that upon the other contention circumstances are conceivable which might have resulted in partial intestacy (though this is a remote contingency in view of the number and age of the cousins), and that it is a general rule that the law favors the vesting of interests at the earliest moment possible. It is also said that the daughters of the deceased uncle bore the same degree of relationship to the testatrix as the other residuary beneficiaries

aside from the uncle, and it would be natural in the absence of a contrary intention to put cousins on an equal footing. These suggestions are all entitled to weight. But as has been said repeatedly the cardinal rule for the interpretation of wills, to which all others are subsidiary, is to determine from all the language used by the testator what is the intent expressed. We proceed to examine the decisive language chosen by this testatrix.

The words " then living" applied to the issue of the brother, J. Brooks, in the first sentence of the clause quoted, must refer to the termination of the life estate, as do also the words " then remaining" in the same sentence. The words " previous decease " in the second sentence mean a decease occurring previous to the termination of the life estate. About these there can be no dispute. Thus, three times by three different phrases reference is made to a single point of time, which is the period of distribution. It is natural that the words " then living" which follow immediately touching the issue of a deceased cousin or uncle should refer to the same point of time rather than to a different one. Words of the same general significance are commonly used in the same rather than in a varying sense in the same instrument. Moreover, the words are tautological and have no force unless they refer to the period of distribution. One cannot die leaving issue unless such issue is then living. A construction which gives effect to all the language used is preferred to one which treats some as superfluous. The final sentence quoted provides for the contingency of the decease of one or more of the beneficiaries named without issue. In this event she gives the share to the survivors or the whole to the survivor. The whole of the residuum could hardly go to one survivor if the share of each as they severally deceased should vest from time to time in all the survivors. This language bears a slight indication that the words " survivors" and " survivor" refer to the period of distribution, and not to that of each decease. Then, too, there is an omission in this sentence of the provision found in the preceding one that the issue shall take by right of representation. This is a further circumstance looking to the same result. There are also no words of present gift to the survivors or survivor, which has been regarded some-

times as indicative of an intent that the interest should not vest until the period of distribution arrives. No one of these considerations standing alone would be decisive, but combined they appear to overbalance the arguments to the contrary, and by a slight preponderance they lead to the conclusion that the point of time intended by the testatrix as that when the survivors or survivor should be ascertained was the period of distribution.

A decree should be entered directing the trustee to divide the share which would have fallen to Herbert H. Eustis equally between Joseph B. Hall, Maria H. Hall, Susan B. Horton and George D. Eustis.

*So ordered.*