GENERAL MORTGAGE AND LOAN CORPORATION *vs.* EVERETT E. DICKEY.

Suffolk. November 12, 1930. — January 12, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Bills and Notes*, Indorser: waiver of presentment; Whether negotiable.

At the trial of an action by an indorsee against the payee and indorser of a promissory note, alleged to be negotiable, there was evidence that, at times when the maker became in default in making payments specified in the note, the plaintiff saw the defendant and the defendant stated that he would see the maker and see if he would not take care of it; that he would try to protect himself by finding a customer for land mortgaged to secure the note and urged the plaintiff to wait, saying that he would see that the plaintiff was "taken out all right." *Held*, that the evidence warranted a finding that the defendant expressly or impliedly waived notice of dishonor.

A promissory note secured by a mortgage, wherein the maker promised to pay the amount thereof to the payee or order "in or within in the following manner, to wit:" $10 on the thirty-first day of each month beginning April 31, 1925, until March 31, 1928, "at which time the

balance of said principal sum together with interest thereon, shall become due and payable", and that upon default "in any one of the above named payments" or in default in payment of principal or interest of any prior mortgage or of taxes or municipal assessments, "the whole of said principal sum, then remaining unpaid, together with interest thereon, shall become due and payable", is negotiable.

In an action by an indorsee against the payee and indorser of the note above described, the note being negotiable and it appearing that the defendant had waived notice of dishonor, it was immaterial as between the plaintiff and defendant what duty the plaintiff had to exhaust "all legal efforts to collect on said note against the makers thereof" before he could recover against the defendant as an assignor of a nonnegotiable instrument.

CONTRACT upon the promissory note described in the opinion. Writ in the Municipal Court of the City of Boston dated July 24, 1929.

On removal to the Superior Court, the action was tried before *Morton*, J. Material evidence and a special finding by the jury are described in the opinion. The judge ordered a verdict for the plaintiff in the sum of $2,230. The defendant alleged exceptions.

The case was submitted on briefs.

*F. Killam*, for the defendant.

*D. Needham & J. T. Comerford*, for the plaintiff.

PIERCE, J. This is an action of contract to recover the balance due on a promissory note secured by a mortgage of real estate. The answer is a general denial and payment.

The note was in form as follows: "Boston, Mass., March 31, 1925  For value received, I, Cecilia V. Lucas promise to pay to Everett E. Dickey or order, the sum of Twenty-five Hundred Dollars with interest at the rate of 7 per cent per annum payable monthly, said principal sum shall be paid in or within in the following manner, to wit: The sum of Ten ($10) Dollars on the 31st day of April 1925, and the further sum of Ten ($10) Dollars on the 31st day of every month, thereafter until the 31st day of March 1928, at which time the balance of said principal sum together with interest thereon, shall become due and payable. Upon default in any one of the above

named payments the whole of said principal sum, then remaining unpaid, together with interest thereon, shall become due and payable. It is agreed and understood that whenever there is any default in the payment of the principal or interest due upon any prior mortgage, or any default in the payment of the taxes due upon the property described in the mortgage given to secure this note, or any default upon any other municipal assessment, then the whole of said principal sum, remaining unpaid together with interest thereon shall become due and payable, and in case this note is not paid at maturity, interest at the rate of twelve (12) per cent per annum shall be charged from said maturity to date of payment."

The defendant indorsed the note at the time he transferred it to the plaintiff, on or about August 11, 1925, for a valuable consideration. The note and mortgage securing the same became due on March 31, 1928. The plaintiff foreclosed the mortgage securing the note on July 9, 1928, and bought the property in at the foreclosure sale for $200; after deducting foreclosure expenses of $78.95, it applied the balance on the note. At the trial it was admitted that no presentment of the note was made or notice of dishonor given the defendant in accordance with G. L. c. 107.

In the Superior Court the case was tried to a jury. One Pheeny, the president and general manager of the plaintiff corporation, testified that he examined the real estate in question and thereafter told the defendant he would not purchase the note as he did not like the property as security; that the defendant then asked the witness if he would buy the note if the defendant indorsed it and stood behind it, and the witness said he would think about that but that he did not want it as a straight mortgage loan; that the defendant interviewed him shortly thereafter and said that he was worth the amount of the note, and asked whether the plaintiff would take the note if the defendant would indorse it and protect the plaintiff's interest, and the witness thereupon agreed

to do so; that sometime after the plaintiff purchased the note from the defendant the maker became slow in her payments; that the witness wanted the defendant to make good on the note, and the defendant said he would see the maker and talk with her; that the witness also asked the defendant to take the property off his hands, and the defendant said he would not but would see the maker and see if she would not take care of it. One Smith, an attorney, testified that at the purchase of the note by the plaintiff the defendant told him that he would stand behind the transaction; that after the foreclosure he saw the defendant and told him he was liable on the note and urged him to take care of it, and the defendant replied that he would examine the property and would try to protect himself by finding a customer; that before the note was due the defendant spoke to him about how the plaintiff's secretary was pestering him about the delays in making the monthly payments. A former secretary of the plaintiff corporation testified that she was present at an early interview between the defendant and Pheeny and that the latter refused to take the note; that the defendant said, " Well, I am on the note and I will take care of it," and Pheeny said he would take it on that basis; that thereafter whenever payments were not made on time by the maker she talked with the defendant about the delay, and told him that the plaintiff would look to him to pay the money due; that after the note was due she talked with the defendant, who asked her to wait, saying he would do something about it himself, and that he would see the plaintiff was " taken out all right." The defendant testified that Pheeny and the secretary never communicated with him in reference to overdue payments on the note; that he never promised anyone that he would pay the note; that he never had any communications with any of the parties until after the foreclosure of the mortgage; that then the parties asked him if he would not sell the property for them, and he endeavored to do so but was unable to carry this plan out.

At the close of the evidence the defendant filed the following requests: (1) " Upon all the evidence, the judgment should be for the defendant"; (2) " The plaintiff in order to recover against the defendant Dickey must show that he has exhausted all legal efforts to collect on said note against the makers thereof." The judge declined to give these requests and the defendant duly excepted. The defendant made no requests for specific instructions to the jury. At the close of the charge, which was not excepted to, the trial judge submitted the case to the jury on the question solely of waiver of notice in form as follows: " Did the defendant expressly or impliedly waive notice of dishonor? " The jury answered this question in the affirmative and the trial judge thereupon directed a verdict for the plaintiff. The defendant duly excepted to the action of the judge. Under G. L. c. 107, § 105, presentment for payment is dispensed with by waiver express or implied. Upon the testimony of the witnesses above set down it is plain the evidence was sufficient to raise the question of fact which was submitted to and answered by the jury. In this respect it is not contended that the instructions were not full and accurate.

The defendant contends that a verdict should have been directed in his favor because, as he alleges, the note in question is nonnegotiable in that it " clearly allowed the payment of the whole principal on any of the dates " on which the sum or sums to be paid became due and payable. In other words the maker of the note by the provision that the " principal sum shall be paid in or within in the following manner " was given the right to pay the principal sum at the time specified or at an earlier time as he may elect. *Stults* v. *Silva,* 119 Mass. 137. *Pierce* v. *Talbot,* 213 Mass. 330. *Central National Bank* v. *Hubbel,* 258 Mass. 124. The provision that " Upon default in any one of the above named payments the whole of said principal sum, then remaining unpaid, together with interest thereon, shall become due and payable " does not make the sum or sums to be paid

uncertain, G. L. c. 107, § 24, and there is no uncertainty as to the time or times of payment of the instalments or principal sum. The note being negotiable, as that term is defined in G. L. c. 107, there is no present occasion to determine as between the plaintiff and defendant what duty the plaintiff had to exhaust "all legal efforts to collect on said note against the makers thereof" before he could recover against the defendant as an assignor of a nonnegotiable instrument.

*Exceptions overruled.*