HERBERT W. DANA *vs.* WILDEY SAVINGS BANK.

Suffolk.    November 13, 1935. — May 27, 1936.

Present: RUGG, C.J., CROSBY, DONAHUE, & QUA, JJ.

*Pledge. Bills and Notes,* Collateral. *Contract,* Construction, Performance and breach, Waiver. *Waiver. Words,* "Immediately."

Under provisions of a collateral security note to a savings bank, that "in case of the depreciation of the market value of" securities pledged, the maker "will immediately and without notice or demand from the" bank deposit and pledge to it "satisfactory additional securities" so that the market value of the entire pledge "shall always be equal to at least thirty per cent more than" the amount of the loan, and that, upon failure so to do, the note should "thereupon" become due and payable and the maker would "pay the same immediately," the maker was not entitled to a reasonable time, after the market value of the securities fell below that required, in which to deposit additional securities, but the note became due upon such fall in value and, the maker failing to pay, the bank had a right to foreclose on the securities.

A failure by the bank at once to exercise its rights as above described and indulgence granted by it to the maker by requesting additional security to be deposited within a certain time did not constitute a waiver by it of the maker's breach of the contract, nor impair its rights to enforce the contract, at least after the lapse of such time.

BILL IN EQUITY, filed in the Superior Court on January 10, 1933.

The suit was heard by *Beaudreau*, J. From a final decree entered by his order the defendant appealed.

*J. A. Boyer*, for the defendant.

*R. B. Owen*, (*E. R. Anderson* with him,) for the plaintiff.

RUGG, C.J. This is a suit in equity to redeem shares of stock pledged by the plaintiff with the defendant to secure a loan to him and alleged to have been sold illegally by the defendant. The case was heard by a judge of the Superior Court, who made a finding of material facts and ordered the entry of a final decree in favor of the plaintiff for substantial damages. The evidence is reported in full. The findings of fact made by the trial judge, based upon conflicting oral testimony, are amply supported by evidence. A careful examination of the record convinces us that they cannot be pronounced plainly wrong. They must therefore be accepted as true. *Lindsey* v. *Bird*, 193 Mass. 200. *Potier* v. *A. W. Perry, Inc.* 286 Mass. 602, 605.

The material facts thus found and pertinent to the grounds of this decision are these: On June 15, 1931, the plaintiff obtained on his note for $7,500 a loan for that sum from the defendant. It was reduced until, on March 15, 1932, there was due $5,500. On the latter date the plaintiff paid the loan by giving a new note for that amount. As collateral for the payment of this note, he deposited with the defendant a number of shares of stock in various corporations. The note bore interest at five per cent, was payable in three months, and contained the following provision: "In case of the depreciation of the market value of said securities or of any hereafter pledged for the said loan, we agree that we will immediately and without notice or demand from the holder, deposit with and pledge to said Bank satisfactory additional securities, so that the market value of the whole shall always be equal to at least thirty per cent, more than the amount of this note and interest. In case we fail so to do, this note shall thereupon become due and payable, and we promise to pay the same immediately." On April 1, 1932, at the request of the defendant, the plaintiff paid $500

on the note, thereby reducing it to $5,000. On the same date the defendant released to the plaintiff forty shares of the common stock of "Electric Bond and Share" which were among the shares of stock originally pledged, and the plaintiff pledged with the defendant fifty shares of "United Corporation" standing in the name of his wife, together with a power of attorney signed by her in blank. On that date the market value of the collateral pledged by the plaintiff exceeded $6,500, the amount to which the plaintiff was required to maintain his collateral under the pledge agreement contained in the note. On April 6, 1932, the plaintiff received a letter from the defendant requesting him to furnish $800 additional security by noon of April 7, 1932. On April 6, 1932, the stocks held by the defendant in pledge as security for the note of the plaintiff had a market value of $5,841.38. On April 7, 1932, at the opening of the stock exchange, these stocks had a market value of $6,131.88, and at the close on that day $5,830.13. No additional collateral was deposited by the plaintiff with the defendant by noon of April 7, 1932. On the morning of April 8, 1932, the assistant treasurer of the defendant, one Roe, visited the plaintiff at his office. There was conflict in the testimony as to what was said and done at that interview. The trial judge found that Roe informed the plaintiff that the defendant was about to sell the pledged securities. The plaintiff asked him to refrain from taking that course and offered to him as additional security certain shares of stock which he had procured and which were of sufficient market value, if accepted and added to the collateral then held by the defendant, to make the total value in excess of $6,500. Roe refused to accept these additional shares, returned to the banking quarters of the defendant, and proceeded to sell the shares of stock held by the defendant as collateral for the note. On April 11, 1932, the plaintiff was informed by the defendant that it had sold the collateral. Remittance was made to him of the balance due from such sale after payment of the note. On the same day the plaintiff remonstrated with officers of the defendant concerning the sale of the securities.

It was agreed that the total market value of the collateral

sold by the defendant was less than $5,000 on May 31, 1932, and on June 15, 1932, the due date of the note, and that the market value of the additional securities offered by the plaintiff was less on each of those dates than it was on April 8, 1932. The trial judge found that, if the additional securities offered by the plaintiff on April 8, 1932, had been accepted by the defendant, the total value of all the collateral would have been $6,574.88, or slightly more than the $6,500 then required. He concluded that the defendant was not warranted in refusing to accept these additional securities and that the sale of the collateral was illegal as to the plaintiff.

A main issue is whether the plaintiff was in default under his agreement with the defendant at the time of the sale of the securities. Neither the record nor the argument of the plaintiff discloses any contention that the sale was not properly conducted, or that there was not compliance with all preliminary requirements, provided the defendant had authority to sell the securities when it did.

The rights of the parties depend upon the terms of the pledge agreement signed by the plaintiff and delivered to the defendant. *Fay* v. *Gray*, 124 Mass. 500, 502. *Whitman* v. *Boston Terminal Refrigerating Co.* 233 Mass. 386, 389. *Palmer* v. *Mutual Life Ins. Co. of New York*, 114 Minn. 1, 8.

The plaintiff contends that under the terms of the pledge agreement he was not in default at the time the collateral was sold. That contention rests upon the meaning which he urges ought to be attached to the requirement that, after the pledged securities had fallen below the thirty per cent margin, "immediately" additional securities should be deposited. He contends that he had a reasonable time within which to make such deposit. The word "immediately," like most other words, has no inflexible import. It has a relative signification. It must be interpreted in connection with its context and all attendant conditions. *Everson* v. *General Accident, Fire & Life Assurance Corp. Ltd.* 202 Mass. 169, 174. *Rhoades* v. *Cotton*, 90 Maine, 453. When used in policies of insurance to describe the time within which certain notices must be given to the insurer, it imposes

on the insured an obligation to use nothing less than due diligence to act with reasonable promptness in all the circumstances. *Friedman* v. *Orient Ins. Co.* 278 Mass. 596, 599. *Wilcox* v. *Massachusetts Protective Association, Inc.* 266 Mass. 230, 237. *Wainer* v. *Weiner,* 288 Mass. 250. In conjunction with other factors it may require a different construction. One of its primary meanings is that action must be taken or an event come to pass instantly, without any delay, or without interval of time. It is used in this sense in that part of the present agreement which provides that the note shall become due and payable upon default respecting the deposit of collateral and "we promise to pay the same immediately." In that connection it can only mean forthwith and without any period of postponement. *General Mortgage & Loan Corp.* v. *Dickey,* 274 Mass. 207, 211. *City National Bank* v. *Adams,* 266 Mass. 239, 243. It is a general rule in the construction of a written instrument that the same word occurring more than once is to be given the same meaning unless a different meaning is demanded by the context. *Hall* v. *Hall,* 209 Mass. 350, 353. *Eustace* v. *Dickey,* 240 Mass. 55, 76. *Clark* v. *State Street Trust Co.* 270 Mass. 140, 151. In the case at bar the word "immediately" is used in a document respecting stocks held as collateral security for a loan from a savings bank. It is common knowledge that such stocks may be liable to sudden and violent fluctuations in value. The provision in the agreement here in question that the plaintiff should immediately and without demand or notice from the defendant pledge additional securities in case of depreciation, plainly imposed on the plaintiff as pledgor the duty and burden of discovering any depreciation in the market value of the pledged securities and of taking the action required of him in that situation. The defendant was under no obligation to afford this information to the plaintiff. The further provision to the effect that the pledgor should deposit with the defendant additional collateral so that the market value of the whole shall "always be equal to at least" thirty per cent more than the amount due on the note also clearly required the plaintiff to prevent the value of that collateral from ever

falling below that thirty per cent margin. That provision is directed not to the restoration of a margin after it has become depleted, but to the prevention of any depletion whatsoever. In no other way can the value of the whole "always" be equal to the required margin. In other jurisdictions similar agreements have been held valid and enforced according to their terms as here interpreted. *Foster* v. *Murphy & Co.* 67 C. C. A. 521, 524. *Stibbard* v. *Owen,* 243 Mich. 138, 139–140. *Smith* v. *Craig,* 211 N. Y. 456, 462–463. *Morgan* v. *Jaudon,* 40 How. Pr. 366, 376. *Sherman* v. *Mutual Life Ins. Co.* 53 Wash. 523. See *Whitman* v. *Boston Terminal Refrigerating Co.* 233 Mass. 386, 389–390.

The conclusion is that the pledge agreement was violated by the plaintiff on April 6, 1932, as soon as the market value of the pledged collateral fell below the required margin. Upon this violation of the obligation of the plaintiff, the debt became due and payable at once. The collateral agreement in its entirety is not set forth in the record. The note containing that agreement, however, was introduced as an exhibit and by stipulation of the parties may be referred to. It is set forth in part in the answer of the defendant. The defendant was authorized to sell the securities "either by public or private sale" "upon the non-performance of any of the" obligations imposed on the plaintiff by the pledge agreement. At the time of the default of the plaintiff on April 6, 1932, by the terms of the agreement the debt matured and the right of the defendant to sell the collateral at once accrued.

The failure of the defendant to exercise its rights instantly upon the default did not constitute a waiver by it of the plaintiff's breach of his contract. The indulgence granted by the defendant by requesting the additional security to be deposited by noon of April 7, 1932, did not impair its rights under the agreement. *Wilkes* v. *Allegan Fruit & Produce Co.* 233 Mich. 215, 220. *Williams* v. *United States Trust Co. of New York,* 133 N. Y. 660. *Franklin National Bank* v. *Newcombe,* 1 App. Div. (N. Y.) 294, 296; affirmed 157 N. Y. 699. *Emmons* v. *McCreery,* 307 Penn. St. 62, 68. The utmost extent of that request for additional collateral

was to require the defendant to wait until the time specified, or perhaps to give reasonable notice of a sale before that time. *Rosenthal* v. *Brown*, 247 N. Y. 479, 485. *Cousens* v. *Watson*, 130 Maine, 456, 460. The defendant waited until the morning of April 8, 1932, before selling the collateral. Its right to enforce the agreement in any view became absolute on the day before. On April 8, the debt having matured at an earlier date, the plaintiff was required, in order to prevent a sale of the pledged securities, not to tender additional securities but to make payment of the full amount of the debt due from him. *Radigan* v. *Johnson*, 174 Mass. 68, 73. *Bendslev* v. *Lovell*, 235 Mass. 133, 135–136. The finding of the trial judge to the effect that the plaintiff offered additional collateral on April 8, 1932, does not enable the plaintiff to maintain his case, because there was at that time no obligation on the part of the defendant to accept additional collateral. It becomes unnecessary to consider whether, if the plaintiff were entitled to recover, the correct rule of damages was followed.

> *Decree reversed. Decree to be entered in favor of the defendant with costs.*