**John BARILARO, Plaintiff, Appellee,**

v.

**CONSOLIDATED RAIL CORPORA- TION, Defendant, Appellee.**

**Appeal of NEW ENGLAND PRODUCE CENTER, INC., Third–Party Defendant.**

**No. 88–1919.**

United States Court of Appeals, First Circuit.

Heard Feb. 28, 1989.

Decided June 2, 1989.

---

risking contempt if the claim of privilege had    merit." *In re Oberkoetter,* 612 F.2d at 18.

Elizabeth M. Fahey with whom Karen M. Moran and Morrison, Mahoney & Miller, Boston, Mass., were on brief, for appellant.

Stephen G. Doucette with whom Michael A. Fitzhugh and Fitzhugh & Associates, Boston, Mass., were on brief, for Consol. Rail Corp.

Before BOWNES, Circuit Judge, COFFIN, Senior Circuit Judge, and FUSTE,* District Judge.

FUSTE, District Judge.

John Barilaro sued his former employer, Consolidated Rail Corporation ("Conrail"), for injuries he sustained allegedly due to the latter's negligence. Conrail, in turn, filed a third-party complaint against New England Produce Center, Inc. ("NEPC") for contractual indemnification under a 1968 "side track agreement" between NEPC and Conrail's predecessor-in-interest. The district court granted Conrail's motion for summary judgment against NEPC on the indemnification claim. NEPC now appeals, arguing a) that there remain genuine issues of material fact thus making summary judgment inappropriate, Fed.R.Civ.P. 56(c), and b) that the district court's interpretation of the side track agreement was in error. We affirm.

## I.

The history of this case is as follows. In 1968 NEPC entered into an agreement with Conrail's predecessor-in-interest governing the ownership, construction and maintenance of railroad side tracks located in the vicinity of NEPC's premises in Everett, Massachusetts. In 1976 Conrail assumed all the contractual obligations set forth in the agreement. The agreement has been in effect since its inception and has not been modified by any party.

Attached to the side track agreement and incorporated therein is a diagram depicting Conrail's side tracks, NEPC's premises and the side tracks owned by NEPC within NEPC's premises. The portions of side track constructed, owned and maintained by Conrail are marked in red on the diagram and hereafter will be referred to as the "red track." The portions of the side track marked in yellow are constructed, owned and maintained by NEPC, and hereafter will be referred to as the "yellow track." The agreement specifies that it applies to the red and yellow tracks, and it does not apply to the lead tracks owned by Conrail which run parallel to NEPC's property line.

On March 4, 1986, John Barilaro was employed as a car inspector by Conrail. While in the process of inspecting some freight cars, Mr. Barilaro was struck and

* Of the District of Puerto Rico, sitting by designation.

injured by a section of gate as it was run over by a Conrail train. NEPC contends that certain details surrounding this accident remain in dispute, although, as we shall see, this view was not shared by the district court below. In particular, NEPC would find a disagreement as to whether the accident occurred on Conrail's lead track or on the red track.[1] NEPC would also find a factual dispute as to who owned the section of gate that struck Mr. Barilaro, such ownership, along with the location of the accident, being material to indemnification under the side track agreement.

Mr. Barilaro filed his suit against Conrail in October of 1986. In January of the following year Conrail answered the complaint and at the same time filed a third-party complaint against NEPC and Carli Fence Company, Inc., seeking tort-based indemnification and contribution. In December of 1987 Conrail amended its third-party complaint so as to seek express contractual indemnification from NEPC under the terms of the side track agreement. NEPC answered Conrail's allegations and filed a counterclaim against Conrail seeking contractual contribution and indemnification under the same agreement.

On January 12, 1988, Conrail filed a motion for summary judgment against NEPC on its contractual indemnification claim. NEPC filed its opposition to this motion along with a memorandum in support, arguing, inter alia, the alleged factual disputes alluded to above. For the time being the district court agreed with NEPC, and on May 24, 1988 Judge Zobel denied Conrail's motion for summary judgment, stating:

> The affidavits and depositions of Conrail and Carli Fence Company give conflicting testimony as to the presence of the gate on the date of the accident, thus leaving in doubt what instrumentality caused plaintiff's injuries. Because the motion of Conrail for summary judgment

is premised on the assertion that the cause was an obstruction for which New England Produce Center is responsible under the Side Track Agreement and that premise is in dispute, the motion is denied.

Two days after this order was issued Conrail filed a motion for reconsideration. This set the stage for a pretrial conference held on May 27, 1988 at which the parties discussed the factual disputes underlying the indemnification claim, including the location of Mr. Barilaro's accident, with Conrail's counsel employing a chalk diagram so as to illustrate his theory on this issue. According to the record, Judge Zobel emerged from the pretrial conference with the understanding that all questions of material fact had therein been resolved and that the only question remaining with respect to Conrail's third-party claim was whether the side track agreement held NEPC liable for indemnification for accidents taking place on the red track, where, to the district court's understanding, the accident had occurred.[2] Answering this question in the affirmative, Judge Zobel allowed the motion for reconsideration and granted summary judgment in Conrail's favor on May 31, 1988, thus binding NEPC to indemnify Conrail for any judgment entered against the latter in the underlying negligence action. As it turned out, a jury returned a verdict in favor of Mr. Barilaro and against Conrail for the amount of $285,000.00.

## II.

We may group NEPC's first set of claims as those arising from the pretrial conference held on May 27, 1988. First, appellant argues that contrary to the district court's belief it did not waive the factual disputes at said conference; rather, appellant's counsel maintains that she vigorously pursued her theories regarding the

---

1. Neither party contends that the accident occurred on the yellow track.

2. No transcript exists of the pretrial conference, nor has appellant provided us with a summary of the proceeding as contemplated by F.R.A.P. 10(c). However, at the subsequent trial of the

underlying tort claim the district judge stated on the record her understanding that the factual disputes were resolved at the pretrial conference; likewise, counsel for NEPC stated on the record her understanding to the contrary.

location of the accident and the ownership of the gate.[3] Second, appellant argues that the district court committed reversible error by allowing Conrail's counsel to utilize a chalk diagram at the pretrial conference while explaining Conrail's position as to the location of the accident.

Conrail responds to these claims as follows: first, that appellant's counsel *did* waive the factual issues at the pretrial conference and is thus barred from raising these claims here, *cf. L. & E. Co. v. U.S.A. ex. rel. Kaiser Gypsum Co.*, 351 F.2d 880 (9th Cir.1965); and second, that the chalk diagram was admissible evidence, that it was used by all parties at the pretrial conference, including appellant's counsel, and that appellant's counsel failed to object to its use at said conference.

■ We immediately question whether the record is sufficient for us to determine what may or may not have happened at the pretrial conference. Moreover, we note that the consequences of any insufficiency properly fall on the appellant. When no transcript is made of a proceeding, F.R.A.P. 10(c)[4] requires the appellant to prepare a statement of the evidence or proceedings from the best available means. This statement is then served on the appellee, who may serve objections or propose amendments. The statement and any objections or proposed amendments are then submitted to the district court for settlement and approval. F.R.A.P. 10(c); *United States v. Mills*, 597 F.2d 693 (9th Cir.1979).

The determination of the district court constitutes the record on appeal and may not be set aside unless it was intentionally falsified or plainly unreasonable. *U.S. v. Keskey*, 863 F.2d 474 (7th Cir.1988); *United States v. Mori*, 444 F.2d 240 (5th Cir.), *cert. denied*, 404 U.S. 913, 92 S.Ct. 238, 30 L.Ed.2d 187 (1971); 9 J. Moore, B. Ward & J. Lucas, Moore's Federal Practice ¶ 210.08[1] at 10–48 (2d ed. 1987).

■ Because appellant has not submitted findings pursuant to F.R.A.P. 10(c), our only basis for determining what happened at the pretrial conference consists of counsel's allegations and certain statements made by Judge Zobel at the trial of Mr. Barilaro's negligence claim. As to the former, a mere recital of what happened at an unrecorded proceeding, even if in the form of an affidavit, is not a substitute for a F.R.A.P. 10(c) determination. *Bilmar Drilling, Inc. v. IFG Leasing Co.*, 795 F.2d 1194, 1200 (5th Cir.1986); *Carlton v. H.C. Price Co.*, 640 F.2d 573, 577 (5th Cir.1981). We therefore cannot use counsel's allegations regarding what occurred at the pretrial conference as grounds for appeal.

■ With regard to the statements from the bench at trial, Judge Zobel indicated repeatedly that all parties at the pretrial conference agreed there were no factual issues left to be decided on the indemnification claim and that the only issue remaining was whether accidents occurring on the red track were subject to indemnification under the side track agreement.[5] Even if

---

3. To this end, appellant's counsel points out that on May 31, 1988, four days after the pretrial conference, she filed an opposition brief in which she alleged genuine issues of material fact.

4. **Statement on the Evidence or Proceedings When No Report Was Made or When the Transcript is Unavailable.**
   If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement shall be served on the appellee, who may serve objections or proposed amendments thereto within 10 days after service. Thereupon the *statement and any objections or proposed amendments shall be submitted to the district*

court for settlement and approval and as settled and approved shall be included by the clerk of the district court in the record on appeal.
F.R.A.P. 10(c).

5. According to the transcript for July 19, 1988, Judge Zobel stated the following:
   Let me just state that after having denied summary judgment because I thought there were certain disputed issues of fact, at the conference that we had, which is not on the record, I had asked counsel whether the only issue concerning indemnification was whether the side track agreement covered the particular area where the accident was alleged to have taken place? And the answer was that that was the only issue on the case.
   I understand that [NEPC's counsel] says that there are other issues, that she didn't

we take these statements, for the purpose of this case, as a substitute for a F.R.A.P. 10(c) determination, we find nothing in the record to indicate that they are intentionally false or plainly unreasonable. Therefore, we accept these statements as an accurate version of what occurred at the pretrial conference and dismiss this portion of NEPC's appeal accordingly.[6]

## III.

▌ We now examine whether the district court erred in holding NEPC liable for indemnification under the side track agreement. NEPC's liability under this agreement allegedly arises from sections Third[7] and Third (b)[8]. Section Third states in pertinent part that NEPC "shall keep *said track* clear of obstructions . . ." (emphasis supplied). Section Third (b), which is to be read in conjunction with section Third, states that NEPC shall indemnify Conrail for any "loss of life or injury . . . arising in whole or in part . . . from the presence or maintenance of structures or obstructions" other than obstructions belonging to Conrail or its licensees.

As discussed in Part II above, we uphold the district court's determination that the only issue arising under these sections is whether the term "said track" as used therein is inclusive of the red track where the accident was found to have occurred. After considering the agreement as a whole, we conclude that "said track" in sections Third and Third (b) includes both the red and yellow portions of side track, and thus NEPC was obligated to clear the red track of obstructions and to indemnify Conrail for an accident resulting from an obstruction located thereon.

We first note that the word "track" is specifically defined in section First so as to include both the yellow and red sections of

---

understand that. But my understanding was that the only issue to be determined was whether, under the side track agreement, [the red track] is subject to the side track agreement. And as I read the side track agreement, it covers that portion of track, and, therefore, Conrail is entitled to indemnification, and, therefore, the motion for summary judgment was allowed.

**6.** In her statements from the bench regarding the granting of summary judgment for Conrail on its third-party claim, Judge Zobel also indicated, with respect to the location of the accident, that the only credible evidence presented on this issue was the deposition testimony of Mr. Barilaro who located the accident on the red track. Appellant claims that Mr. Barilaro's deposition testimony does not clearly indicate that the accident occurred on the red track, and that there is sufficient evidence to the contrary to warrant a jury determination on this issue. We disagree, and hold that summary judgment on this issue was appropriate under Fed.R.Civ.P. 56(c) even assuming NEPC had not waived its factual contentions at the pretrial conference.

**7.** Section Third states:
The INDUSTRY [NEPC] shall keep said track clear of obstructions; and, except as to the clearances, if any, less than standard shown upon said print, shall not allow any temporary or permanent obstruction or structure to be constructed or maintained within the space of 6 feet outside the nearest rail of any straight portion of said track, being the standard clearance for structures of the RAILROAD COMPANY [Conrail] nor within such additional space outside the nearest rail of any curved portion of the said track as the standard requirements of the RAILROAD COMPANY may, from time to time, prescribe for curves of like degree, nor allow any fixed obstructions to be constructed or maintained within the space of 22 feet, or any wire or cable line, or movable obstruction to be strung, placed or to remain within the space of 27 feet above the top of the rail of said track, which aforementioned clearances being the standard clearances of the RAILROAD COMPANY shall govern the location of the obstructions or structures herein mentioned except when the clearance established by law is more than the aforesaid standard clearances in which event the clearance established by law shall govern.

**8.** Section Third (b) states:
The INDUSTRY shall assume and indemnify and hold harmless the RAILROAD COMPANY for and from any and all liability, loss and expense (including Workmen's Compensation), resulting from loss of life or injury to persons or damage to property (including employees of either of the parties hereto), arising in whole or in part by reason of or in any way resulting from the presence or maintenance of structures or obstructions, whether shown on said print or otherwise, encroaching upon the aforesaid standard clearances or from the presence of wire or cable lines over or adjacent to said track other than structures or obstructions, wire or cable lines belonging to the RAILROAD COMPANY or its licensees.

track.[9] We do not think that this definition is altered in sections Third and Third (b) by adding the word "said" before "track." In usual parlance, when the word "said" precedes another term it is so used in order to call the reader's attention to an antecedent meaning or designation for the term. Nothing in the context of sections Third or Third (b) indicates that the logical antecedent is anything other than the definition of "track" found in section First. This is true regardless of the fact that in the context of other sections "said track" might refer to a different antecedent definition established in those sections.[10]

Furthermore, our reading of the agreement as a whole indicates an intention to indemnify Conrail for losses it may incur in connection with providing side track service for NEPC. When construing a contract, we endeavor "to ascertain ... the true intention of the parties." *Shea v. Bay State Gas Co.*, 383 Mass. 218, 225, 418 N.E.2d 597, 602 (1981). Here the intention of the parties is very clear. The sidetrack was constructed for the benefit of NEPC. In exchange for providing train service, Conrail's predecessor in interest contracted to be indemnified for certain losses which it

may incur: specifically, losses incurred in connection with grants and permits for the right of way, losses resulting from obstructions on or about the tracks, and those losses suffered as a result of fire. We find it consistent with the general intent to indemnify for such losses that the words "said track" as it appears in sections Third and Third (b) include the red track.

For its part, NEPC claims that the words "said track" as they appear in sections Third and Third (b) cannot be read to include the red track because such a reading would clash with the underlying intent of the agreement, as evidenced by the sections First (b)[11] and (c),[12] to divide the custodial duties between Conrail and NEPC. Section First (c), observes NEPC, specifically obligates it to "maintain" only the yellow track,[13] while section First (b) requires Conrail to "maintain" the red track. Given this scheme, NEPC argues that the parties to the agreement intended to obligate it to clear only the yellow track of "obstructions" because section First (b) specifically requires Conrail, and not NEPC, to "maintain" the red track.

While appellant's interpretation is credible, we do not find it ultimately persuasive.

9. Section First states:
   The term "track" as used herein includes all track, roadbed, bridges and other supporting structures or appurtenances used directly in connection therewith, shown in red and yellow colors on [the] print ... hereto attached and made a part of this agreement. The track shall be constructed and owned, and the cost of constructing and maintaining the same, shall be borne by the parties hereto as follows.

10. Our reading of the entire agreement indicates that "said track" is generally used throughout to refer to the entire side track network. It is, moreover, "a general rule in the construction of a written instrument that the same word occurring more than once is to be given the same meaning unless a different meaning is demanded by the context." *Dana v. Wildey Sav. Bank,* 294 Mass. 462, 466, 2 N.E.2d 450, 453 (1936). Aside from sections Third and Third (b), "said track" is used in eight sections of the agreement. In four of these sections the phrase is left unmodified, and in each case it apparently refers to the entire side track network. In two other sections the phrase is modified so as to refer to a *"part* of said track," the logical inference being that the *whole* of "said track" again refers to the entire network. In only two sections does "said

track" apparently refer to less than the entire network. However, both of these sections begin by designating a specific section of track, with "said track" later being used to refer to this antecedent designation. Thus, the use of the term in these sections is based on the context and does not alter the meaning of the phrase as it is used in the rest of the agreement.

11. Section First (b) states:
    Unless otherwise hereinafter provided, the RAILROAD COMPANY shall, at its own expense, construct, own and maintain that part of the track from the switch point of connection with the RAILROAD COMPANY'S line of railroad to the property line, (290 feet) as indicated in red on said print.

12. Section First (c) states in pertinent part:
    The INDUSTRY shall, at its own expense, construct and maintain that part of the track and appurtenances beyond the property line being indicated in yellow on said print, and shall own the track material therein.

13. Along this same line, NEPC points out that its obligation under section First (f) to clear "ice, snow and refuse" is also limited to the yellow track.

In addition to our discussion above, we note that section First (b) does not lay down a blanket requirement that *all* of the maintenance on the red track be performed by Conrail. Rather, that section merely states that Conrail is to maintain the red track "[u]nless otherwise hereinafter provided...." Thus, it is not inconsistent with the custodial scheme discussed above that *some* maintenance of the red track, such as the clearing of obstructions, be performed not by Conrail but by NEPC. Rather, such an exception to the general scheme for the division of labor is in fact anticipated in the language of section First (b).

We therefore hold that the words "said track" in the relevant sections of the side agreement refer to both the red and the yellow sections of track.

Accordingly, the district court's granting of summary judgment in favor of Conrail is *affirmed*.