UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.                                        No. 99-4687

JEREMIAH LOCUST, SR.,
        *Defendant-Appellant.*

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.                                        No. 99-7713

JEREMIAH LOCUST, SR.,
        *Defendant-Appellant.*

Appeals from the United States District Court
for the Western District of North Carolina, at Bryson City.
Lacy H. Thornburg, District Judge.
(CR-98-185)

Argued: December 5, 2003

Decided: April 26, 2004

Before WIDENER, MICHAEL, and SHEDD, Circuit Judges.

_____

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** James Patrick McLoughlin, Jr., James William Haldin, MOORE & VAN ALLEN, P.L.L.C., Charlotte, North Carolina, for Appellant. B. Frederic Williams, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Robert J. Conrad, Jr., United States Attorney, Jerry W. Miller, Assistant United States Attorney, Asheville, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Jeremiah Locust was convicted on federal charges of first degree murder (two counts) and attempted murder (one count). He appeals, arguing that he is entitled to a new trial because of omissions in the trial transcript, insufficient evidence, errors and omissions in jury instructions, and a double jeopardy violation. We affirm the conviction on count one for first degree murder and the conviction for attempted murder. However, because Locust was convicted on two counts of first degree murder but only killed one person, we vacate the judgment in part and remand for the district court to vacate the conviction and sentence on the second count of first degree murder.

I.

The indictment, returned in July 1998, charged Jeremiah Locust with two counts of first degree murder for killing National Park Ranger Joseph Kolodski in violation of 18 U.S.C. §§ 1114(1), 1111(a), and 7(3); one count of attempting to murder National Park Ranger Anthony Welch in violation of 18 U.S.C. §§ 1114(1), 1113, and 7(3); and assaulting with a dangerous weapon a person traveling

on the Blue Ridge Parkway in violation of 18 U.S.C. §§ 113(a)(3), and 7(3).

Trial began on January 21, 1999. The government presented the following evidence. On June 21, 1998, several witnesses traveling through the Blue Ridge Parkway area of North Carolina called authorities to report that they had seen a shirtless man, walking in the middle of the road holding a rifle and what appeared to be a beer can. The man, who was identified at trial as Locust, was "staggering like he had been drinking," J.A. 1019, and was "muttering to himself," J.A. 1008. Several officers, including Great Smoky Mountains National Park Ranger Joseph Kolodski and Blue Ridge Parkway Ranger Anthony Welch, responded to the calls.

Ranger Kolodski arrived at the scene first and radioed his dispatcher that a man with blue jeans and no shirt was walking in the road and "carrying a long gun of some type." J.A. 453. Upon seeing Kolodski, Locust left the road and entered the woods, where he continued to walk parallel to the road. Several minutes later Kolodski informed the dispatcher that "the subject is attempting to head down into the off side of the roadway underneath me and he is still carrying that weapon." J.A. 455. Kolodski soon "lost sight of [the suspect]." J.A. 1320. Before long, however, Kolodski radioed his fellow officers to report that he had regained sight of Locust, but was unable to tell if he was pointing his weapon in Kolodski's direction. Seconds later, there was a gunshot and Ranger Kolodski fell to the ground, gripping his chest. The shot was fatal. Ranger Welch, who had just arrived at the scene in his vehicle, heard the gunshot and saw Kolodski fall. Several more shots followed, forcing Welch and another ranger to take cover at the rear of their vehicles. Welch began scanning the area in an attempt to locate the gunman when "all of a sudden . . . Jeremiah Locust was standing there." J.A. 576. After "lock[ing] eyes" with Locust, Welch fired his shotgun in Locust's direction, causing him to flee. Welch again came under sustained fire, and the rear window of his vehicle was blown out. The gunfire eventually subsided. Hours later, two park game wardens arrested Locust several miles from where Ranger Kolodski was killed. Locust smelled of alcohol. A search of the surrounding woods revealed several spent shell casings, boot prints, and a high-powered rifle.

Locust took the stand in his own defense. He testified that on the morning of June 21 1998, he drank two beers, took his diabetes medication, and placed his rifle, a guitar, and several six-packs of beer in his station wagon. He then drove into the woods with the intention of sighting his rifle. Locust remembers firing his weapon a couple of times before deciding to leave the woods. On his way out, his car became stuck in a muddy road; at that point Locust abandoned his car and hid his guitar in the bushes. Next, he grabbed his rifle and some beer as he prepared to proceed on foot. After walking ten to twelve feet, Locust said he remembered nothing further. When he came to, he was being handcuffed by park officers.

A defense expert testified that Locust's diabetes medication, taken on an empty stomach in combination with alcohol, may have caused his blood sugar to drop, thereby inducing a hypoglycemic reaction. The expert stated that hypoglycemia can result in confusion, agitation, and even cause seizures. The expert also indicated that an individual with Locust's limited cognitive ability would have a difficult time planning and thinking ahead if he was suffering from low blood sugar.

On the seventh day of trial, January 29, 1999, the lawyers presented closing arguments, and the court instructed the jury, which deliberated until 9:00 p.m. At 9:30 the next morning the jury inquired whether it would be sent back to discuss second degree murder if it found Locust not guilty on the charges of first degree murder. After further instruction from the court, the jury returned to deliberate. Later, at 11:20 a.m., the jury returned a verdict of guilty against Locust on the two counts of first degree murder and on the single count of attempted murder, but acquitted him on the charge of assault with a dangerous weapon. The verdict sheet indicated that the jury believed the murder of Ranger Kolodski had been committed while Locust was lying in wait. Shortly after the verdict was read, the government withdrew its notice of intent to seek the death penalty. On August 25, 1999, the district court sentenced Locust to a term of life in prison on the two counts of murder and a term of 240 months on the count of attempted murder, all to be served concurrently. Locust filed a notice of appeal on August 30, 1999.

In the months that followed, several lawyers were appointed to represent Locust on appeal and then relieved. His current lawyer was

appointed on August 25, 2000, about a year after the appeal was filed. None of the lawyers was able to obtain a full copy of the trial transcript. Eventually, the clerk of the district court filed a certification that the court reporter's stenographic notes and backup tapes for the opening and closing arguments, the charge to the jury, and the verdict could not be located. After a series of motions in this court dealing with whether the record was complete for the purposes of appeal, we entered an order on September 13, 2002, directing the district court "to settle the record, pursuant to Rule 10 of the Federal Rules of Appellate Procedure." J.A. 283-84. On October 8, 2002, the district court ordered Locust to prepare "a statement of the evidence" summarizing the missing portions of the transcript pursuant to Fed. R. App. P. 10(c). J.A. 289-90. Locust's lawyer in turn wrote letters to the government and to Locust's trial counsel requesting any documents that might assist in the preparation of a Rule 10(c) statement. Locust's lawyer also asked the government whether it would seek the death penalty if Locust was granted a new trial. In response, the government declined to make any documents available until Locust identified the issues he sought to raise on appeal. The government further said that if a new trial was granted "on the basis of insufficiency of the record for purposes of appeal," the government would seek the death penalty at any retrial. J.A. 415. Thereafter, Locust's lawyer, asserting that the government's response was "intended to chill [Locust's] right to appeal," filed a motion asking the district court for an immediate ruling on whether the government could seek the death penalty in a retrial. J.A. 390. The district court concluded that it had no jurisdiction to rule on the death penalty issue, but it granted Locust an extension (his second) to comply with Rule 10(c). Rather than attempting to prepare and file a Rule 10(c) statement, Locust requested yet another extension "so that the Fourth Circuit of Appeals [could] rule on his Motion for an Immediate Ruling on the United States' Ability to Seek the Death Penalty upon Retrial." J.A. 405. When the district court denied this third request for an extension, Locust filed a motion to compel the government to produce any documents that might help in preparing a Rule 10(c) statement. At that point, the district court concluded that any effort to settle the record had become deadlocked due to the death penalty issue. Without assigning blame to either side, the court denied Locust's motion to compel and proceeded to "settle the record on appeal." J.A. 418. The court supplemented the record

with various notes taken by his clerks, a copy of the written instructions read to the jury, and the verdict sheets. The court's order also stipulated that "the Defendant has preserved any assignment of error for any argument challenging the legal sufficiency or accuracy of any jury charge and of any request for a jury instruction made and denied." J.A. 422.

With the record finally settled, Locust filed his brief on appeal, raising several challenges to his conviction. Locust contends that (1) omissions in the transcript entitle him to a new trial; (2) the district judge erroneously instructed the jury on first degree murder and lying in wait; (3) there was insufficient evidence to support a finding of first degree murder; (4) the district court erred in failing to give a jury instruction on assessing the credibility of police officer testimony; and (5) his indictment and subsequent conviction on two counts of murder violated the Double Jeopardy Clause. We also have before us Locust's motion for a declaratory ruling that he is not subject to the death penalty on retrial.

II.

A.

Locust first argues that he is entitled to a new trial because there is no transcript of the opening and closing arguments or the district court's jury instructions. Although 28 U.S.C. § 753(b) "provides for the recording of a verbatim transcript of trial proceedings in order to safeguard a defendant's right to appellate review," *United States v. Gillis*, 773 F.2d 549, 554 (4th Cir. 1985), deficiencies in the transcript warrant a new trial only when the defendant can show that the omissions specifically prejudice his appeal, *United States v. Huggins*, 191 F.3d 532, 536 (4th Cir. 1999). Because the district court supplemented the record with materials that provide us an adequate means of reviewing this case, we do not believe Locust has demonstrated that he was specifically prejudiced by transcript omissions.

When portions of a transcript are unavailable, courts normally rely on Federal Rule of Appellate Procedure 10(c) to settle the record. *See, e.g.*, *Barilaro v. Consolidated Rail Corp.*, 876 F.2d 260, 263 (1st Cir. 1989); 16A Wright, Miller, & Cooper, Federal Practice and Procedure

§ 3956.3 (1999). Rule 10(c) states that "the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection." The statement, along with any objections or proposed amendments offered by the appellee, are submitted to the district court for settlement and approval. *See* Fed. R. App. P. 10(c). Because Rule 10(c) was specifically designed to give an appellant the opportunity to reconstruct an otherwise insufficient record, courts have consistently expected the appellant to make the first move with the Rule 10(c) statement. *See United States v. First National Bank*, 691 F.2d 386, 387 (8th Cir. 1982) (noting that because appellant "made no attempt to make a record under Rule 10(c) . . . the absence of an adequate record . . . must be laid entirely at [the appellant's] feet"); *Bergerco v. Shipping Corp. of India, Ltd.*, 896 F.2d 1210, 1217 (9th Cir. 1990)("appellant seeking a new trial because of a missing or incomplete transcript must . . . show that a Rule 10(c) proceeding has failed"); *Herndon v. City of Massillon*, 638 F.2d 963, 965 (6th Cir. 1981) (appellant's "failure to avail [himself] of the procedure designed to reconstruct unrecorded proceedings [leaves] [him] with no objection based on the missing record"); *see also United States v. Renton*, 700 F.2d 154, 158-59 (5th Cir. 1983); *Barilaro*, 876 F.2d at 263. The district court concluded that Rule 10(c) procedures broke down here because the parties got sidetracked by the issue of whether the government could seek the death penalty in the event of a new trial. However, the district court did not assign blame to either Locust or the government; it simply settled the record without a Rule 10(c) statement. In this circumstance, we will not weigh Locust's failure to file a Rule 10(c) statement against him as we consider whether he is prejudiced by the missing portions of the transcript.

Locust argues that he is prejudiced by his inability to obtain a verbatim transcript of the district court's instructions to the jury. In lieu of the unattainable transcript, the district court placed in the record a written copy of "the actual jury instructions read to the jury." J.A. 422. Locust offers nothing to suggest that these written instructions do not accurately reflect what was read to the jury. In a similar case the Third Circuit said, "although we recognize that at times a judge may vary a few words from the written version of the charge, there has been no argument made here that such alterations, if any, were substantial. Without this showing, any slight changes in the reading

of the charge should make no difference to our review function."
*United States v. Sierra*, 981 F.2d 123, 126-27 (3d Cir. 1992). That
reasoning applies here. Locust has not shown any prejudice as a result
of his inability to obtain a transcript of the jury instructions. The writ-
ten copy of the instructions is sufficient for our review.

The transcript also omits the proceedings when the jury asked the
district court "whether it would be sent back to the jury room to dis-
cuss second degree murder if it found the defendant not guilty on the
charges of first degree murder." J.A. 132. The clerk's notes indicate
that in response to this question, the court "repeated portions of previ-
ous instructions relating to first and second degree murder and how
they are to complete the verdict sheet. Portion of the verdict sheet re-
read to the jury." J.A. 444. The written jury instructions, in turn, con-
tain a detailed and accurate instruction regarding the jury's role in
considering the lesser-included offense of second degree murder and
the proper method of filling out the verdict sheet. In addition, the ver-
dict form contained an instruction directing the jury, "If you find the
defendant not guilty of the crime of first degree murder, consider next
the included offense [of second degree murder]." J.A. 135. The jury's
completed verdict form shows no inconsistencies or errors, thereby
indicating that it understood its role in deciding whether Locust's
actions constituted first or second degree murder. Based on the
lengthy instruction regarding lesser included offenses, as well as the
consistent verdict sheet, we conclude that Locust is not prejudiced by
the lack of a transcript of the proceedings relating to the jury's ques-
tion.

Locust also alleges that he is prejudiced by his failure to have a
transcript of the opening arguments. Specifically, Locust claims that
a transcript of opening arguments is necessary because his trial coun-
sel recalled the government "ma[king] highly prejudicial remarks
[during oral argument] about Mr. Locust stalking the victims like a
wild animal and once he had shot his victims, doing some type of
Native American war chants in celebration of the kill." J.A. 277. Even
accepting as true Locust's account of the government's opening argu-
ment, no prejudicial error occurred because the evidence at trial sup-
ported the theories advanced by the prosecutor during his opening
statement. Our court has recognized that "the very purpose of an
opening statement is to inform the jury how the case developed, its

background and what will be attempted to be proved." *Butler v. United States*, 191 F.2d 433, 435 (4th Cir. 1951). The record shows that Locust did in fact utter some type of chant after shooting Ranger Kolodski. There was also lengthy testimony regarding Locust's movements through the woods preceding Kolodski's death. The jury could have taken this evidence as proof that Locust had been stalking Kolodski on the day in question. Because the statements purportedly made during opening statement would not, of themselves, provide grounds for reversal, Locust is not prejudiced by the transcript's omission of those statements. *See, e.g.*, *Edward v. United States*, 374 F.2d 24, 26-27 (10th Cir. 1967).

Locust also contends that he is prejudiced by the transcript's omission of closing arguments because his trial counsel recalls objecting to a tape that was played by the government during closing arguments. However, a copy of that tape was specifically made part of the record in the district judge's order settling the record on February 27, 2002. Because Locust had a copy of the tape, he had the wherewithal to appeal any issue relating to the tape's use at trial. Therefore, he has suffered no prejudice.

In sum, Locust is not entitled to a new trial because of omissions in the transcript.

## B.

Locust next argues that the written jury instructions, placed in the record by the district court, erroneously define first degree murder and lying in wait. We review jury instructions to insure that they "fairly state the controlling law." *United States v. Cobb*, 905 F.2d 784, 789 (4th Cir. 1990). A judgment will be reversed for error associated with the jury instructions "only if the error is determined to have been prejudicial, based on review of the record as a whole." *Sturges v. Matthews*, 53 F.3d 659, 661 (4th Cir. 1995).

## 1.

We first consider the district court's instructions regarding first degree murder. The court instructed the jury that for it to find Locust

guilty of first degree murder, the evidence had to show "beyond a reasonable doubt . . . [that he] killed Joseph Kolodski by lying in wait OR with willfulness, deliberateness, maliciousness, and premeditation." J.A. 341. Locust argues that by using the disjunctive form in the instruction, the court improperly permitted the jury to convict on a theory of lying in wait without concluding that Locust's actions were willful, deliberate, malicious, and premeditated. Because federal law defines first degree murder as any killing committed while lying in wait or with premeditation, there was no error in the instruction.

The term "lying in wait" is generally defined as "the series of acts involved in watching, waiting, and hiding from someone, with the intent of killing or inflicting serious bodily injury on that person." Black's Law Dictionary 960 (7th ed. 1999). Federal law, in turn, defines first degree murder as "every murder perpetrated by . . . lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing." 18 U.S.C. § 1111(a). By its very terms, the statute implies that a murder committed while lying in wait inherently demonstrates the deliberation and premeditation necessary to elevate a murder to the grade of first degree. Indeed, if section 1111(a) required the government to prove a murder was premeditated in addition to demonstrating that it was committed while lying in wait, the statute's reference to lying in wait would be rendered meaningless. It is "a cardinal principle of statutory construction that a statute ought . . . to be so construed that, when it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). We therefore hold, consistent with established authority, that section 1111(a) requires the government to prove only that a murder was committed while lying in wait or with premeditation. *See, e.g.*, *United States v. Downs*, 56 F.3d 973, 977 (8th Cir. 1995) (stating that section 1111(a) embodies "two independently sufficient grounds for first-degree murder . . . first, that [defendant] had been 'lying in wait'; and second, that the killing was 'willful, deliberate, malicious, and premeditated.'"); *United States v. Shaw*, 701 F.2d 367, 392 n.20 (5th Cir. 1983) ("[A] conviction for first degree murder requires the additional proof of premeditation, poisoning, *or* lying in wait") (emphasis added); *see also Hutchins v. Garrison*, 724 F.2d 1425, 1430 (4th Cir. 1983) (noting that killing was "premeditated *or* committed while lying in wait") (emphasis added); Black's Law Dictionary 960 (7th ed. 1999) ("Because lying

in wait shows premeditation and deliberation, it can result in an increased sentence."); 18 A.L.R.4th 961 (1995) (same).

Locust also argues that the district court's first degree murder instructions constructively amended the indictment. Although the indictment states that "Jeremiah Locust did unlawfully, willfully, deliberately, maliciously with premeditation *and* by lying in wait kill . . . Joseph Kolodski," J.A. 32-33 (emphasis added), the district court amended the indictment, Locust says, by instructing the jury in the disjunctive, stating that the government had to prove that "the defendant killed Joseph Kolodski by lying in wait OR with willfulness, deliberateness, maliciousness, and premeditation." Our circuit has rejected this argument. "Where a statute is worded in the disjunctive, federal pleading requires the Government to charge in the conjunctive. The district court, however, can instruct the jury in the disjunctive." *United States v. Montgomery*, 262 F.3d 233, 242 (4th Cir. 2001) (citing *United States v. Rhynes*, 206 F.3d 349, 384 (4th Cir. 1999).

Accordingly, we conclude that the district court's instructions did not result in a constructive amendment to the indictment.

2.

Locust also argues that the district court's definition of lying in wait was erroneous. The court instructed the jury that "lying in wait is generally held to require a watching and waiting in a concealed position with an intent to kill or do serious bodily harm to another. It does not require being in a prone position." J.A. 350. The district court used a definition that is generally accepted. *See, e.g.*, *United States v. Shaw*, 701 F.2d 367, 393 n.21 (5th Cir. 1983) (using the same language); *see also* 2A Fed. Jury Prac. & Instr. § 45.03 (5th ed. 2000); Black's Law Dictionary 960 (7th ed. 1999). Nevertheless, Locust contends that "the instruction fails to give the jury correct information that some time is required to form the requisite intent." Appellant's Br. at 30. We reject this argument because the definition given by the court specifically required the jury to find that the defendant was "watching and waiting," which clearly embodies the element of time. There was thus no error in the district court's definition of lying in wait.

## C.

Locust argues that there was insufficient evidence for the jury to conclude that he killed Ranger Kolodski while lying in wait. Again, lying in wait is defined as "the series of acts involved in watching, waiting, and hiding from someone, with the intent of killing or inflicting serious bodily injury on that person." Black's Law Dictionary 960 (7th ed. 1999). There was sufficient evidence for a jury to conclude that Locust was lying in wait at the time he shot Ranger Kolodski. Kolodski's radio transmissions indicate that when he arrived at the scene, Locust left the road. Kolodski "lost sight of [Locust]" when he "disappeared into the woods." J.A. 1320. Kolodski saw Locust again before he was shot, and the evidence suggests that Locust had been using the intervening time to maneuver himself into a dominant position. Several shell casings were found at the base of a tree some seventeen to eighteen feet off the edge of the road on a steep embankment, a location that provided Locust with a favorable vantage point above Kolodski's position. After Kolodski was shot, several more shots were fired in the direction of other officers. Based on this evidence, a reasonable jury could find that Locust entered the woods in order to take cover and wait for an opportune moment to fire upon Kolodski and his fellow officers. The evidence was thus sufficient for the jury to convict Locust of killing Ranger Kolodski while lying in wait.

## D.

Locust next claims that he is entitled to a new trial because the district court erred in failing to instruct the jury on assessing the credibility of police officer testimony. Locust did not request such an instruction at trial, and we therefore review its omission for plain error. *United States v. Brown*, 202 F.3d 691, 698 n.13 (4th Cir. 2000). Here, the district court gave a general instruction on witness credibility, advising the jury that it:

> must determine the credibility of the witnesses . . . [and] among the things which you may properly consider in the determination of the credibility of the witnesses are . . . (3) Whether there has appeared from his or her attitude or con-

duct any bias, prejudice or feeling which may cause his or her testimony to be influenced.

J.A. 328. A general witness credibility instruction is sufficient, unless the defendant can demonstrate some special need for an instruction on assessing the credibility of a particular witness or witness category. *See United States v. Torres*, 115 F.3d 1033, 1038 (D.C. Cir. 1997); *United States v. Tamura*, 694 F.2d 591, 602 (9th Cir. 1982); *see also United States v. Urian*, 858 F.2d 124, 127 n.2 (3d Cir. 1988). Locust had full opportunity to raise credibility issues during his cross-examination of any officer who testified, and he has made no showing of a special need for the supplemental instruction on officer credibility. *See Torres*, 115 F.3d at 1038. There was no error, much less plain error, in his failure to have this instruction.

### E.

Finally, Locust invokes the Double Jeopardy Clause to argue that he is entitled to a new trial because he was charged twice under the same statute for the single killing of Ranger Kolodski. Locust is not entitled to a new trial on this ground. Nevertheless, because he only committed a single act of murder, his conviction on one of the two counts of first degree murder should be vacated.

Locust was indicted on two counts of violating 18 U.S.C. § 1114, which states:

> whoever kills or attempts to kill any officer or employee of the United States . . . while such officer or employee is engaged in or on account of performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance, shall be punished . . . .

Count one charged Locust with killing "an officer and employee of the United States while such officer and employee was engaged in the performance of his official duties." J.A. 32. Count two charged him with killing "a person assisting an [officer of the United States] in the performance of . . . official duties as an officer . . . of the United

States." J.A. 33. Although Ranger Kolodski was an officer of the Great Smoky Mountains National Park, he was shot while acting in the jurisdiction of The Blue Ridge Parkway. The government asserts that it charged Locust with two separate counts of first degree murder because it believed a jury might find that Kolodski was not acting in the performance of his official duties when he responded to a call outside of his jurisdiction. By additionally charging Locust with murdering a person assisting an officer of the United States in his official duties, that is, killing Ranger Kolodski while he was assisting Blue Ridge Parkway Ranger Welch, the government sought to avoid this potential problem.

Our circuit has made it clear that "the prosecutor [is permitted] to carve up criminal conduct into many counts so that technical problems with the evidence will not allow the true criminal to walk free." *United States v. Luskin*, 926 F.2d 372, 374-75 (4th Cir. 1991). This is permissible "even if some of the counts are . . . constitutionally identical offenses." *Id.* at 378. *See also Ball v. United States*, 470 U.S. 856, 859-60 (1985) (defendant may be "prosecuted simultaneously" for violating two statutes even though he ultimately could not be convicted and punished for both offenses). Therefore, there was no error in indicting and trying Locust on two counts of first degree murder.

However, while Locust could be prosecuted simultaneously for two counts of violating § 1114, that does not mean that his conviction and punishment on both counts can stand. *See Ball*, 470 U.S. at 861. Rather, when an act "violates but a single statute . . . only the single penalty prescribed by the statute can be imposed." *Braverman v. United States*, 317 U.S. 49, 54 (1942). *See also United States v. Thornton*, 972 F.2d 764, 766 (7th Cir. 1992). Because the murder of Ranger Kolodski violated a single statute, it appears that Congress only intended Locust to be punished once for this offense. The district court, however, imposed two life sentences to be served concurrently for the separate convictions arising out of count one and count two, both charged under § 1114. It was error for the court to enter judgment and sentence on both counts because "the second conviction, even if it results in no greater sentence, is an impermissible punishment" that "does not evaporate simply because of the concurrence of the sentence." *Ball*, 470 U.S. at 864-65. According to *Ball* "the district

judge should [have] enter[ed] judgment on only one of the statutory offenses." *Id.* at 865.

Because it is now clear that Locust's conviction for the murder of Ranger Kolodski should be affirmed, we will affirm the murder conviction on count one of the indictment. However, in accordance with Supreme Court precedent, we vacate the judgment in part and remand for the district court to vacate Locust's conviction and sentence for first degree murder under count two of the indictment. This prompts us to add a final note. If Locust's conviction on count one should be set aside in some later proceeding, the district court would not be precluded from reinstating the conviction and sentence on count two. *See United States v. Silvers*, 90 F.3d 95 (4th Cir. 1996) (after one conviction was overturned in habeas proceeding because key witness committed perjury, district court could reinstate another conviction that was previously vacated on double jeopardy grounds).

### III.

We affirm Locust's conviction and sentence on count one for first degree murder and on count three for attempted murder. We vacate the judgment in part and remand for the district court to vacate Locust's conviction and sentence on count two for first degree murder. We deny as moot Locust's motion for a ruling that he is not subject to the death penalty on retrial. Locust's motion to file an amended reply brief is granted.

*AFFIRMED IN PART,*
*VACATED IN PART,*
*AND REMANDED*