******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* PEDRO L. MIRANDA
(SC 19228)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Robinson, Js.

*Argued February 10—officially released August 18, 2015*

*Procedural History*

Substitute information charging the defendant with two counts of the crime of capital felony, and with one count each of the crimes of murder, felony murder and kidnapping in the first degree, brought to the Superior Court in the judicial district of Hartford and tried to the jury before *Dewey, J.*; verdict and judgment of guilty of one count each of capital felony, murder, felony murder and kidnapping in the first degree, from which the defendant appealed to the Appellate Court, *Lavine, Beach* and *Borden, Js.*, which reversed in part the trial court's judgment and remanded the case to that court with direction to vacate the defendant's conviction of felony murder and murder, and the state, on the granting of certification, appealed to this court. *Affirmed.*

*Melissa L. Streeto*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, *David Zagaja*, senior assistant state's attorney, and *Melissa Patterson*, assistant state's attorney, for the appellant (state).

*Alice Osedach*, assistant public defender, for the appellee (defendant).

*Opinion*

ROBINSON, J. The sole issue in this certified appeal is whether the vacatur remedy prescribed in *State* v. *Polanco*, 308 Conn. 242, 61 A.3d 1084 (2013), applies to the double jeopardy violation[1] caused by cumulative homicide convictions arising from the killing of a single victim. The state appeals, upon our grant of its petition for certification,[2] from the judgment of the Appellate Court reversing in part the trial court's judgment and remanding the case with direction to vacate the convictions of the defendant, Pedro L. Miranda, for murder and felony murder on the ground that those convictions violated constitutional prohibitions against double jeopardy because they were cumulative of the controlling conviction of capital felony. See *State* v. *Miranda*, 145 Conn. App. 494, 520, 75 A.3d 742 (2013). On appeal, the state claims that the Appellate Court improperly concluded that vacatur was the appropriate remedy for the double jeopardy violation caused by the cumulative conviction of felony murder. We disagree with the state's claim and, accordingly, affirm the judgment of the Appellate Court.

The record reveals the following relevant facts and procedural history.[3] In connection with the killing of a single victim, a jury found the defendant guilty of capital felony in violation of General Statutes (Rev. to 1987) § 53a-54b (5),[4] murder in violation of General Statutes (Rev. to 1987) § 53a-54a (a), felony murder in violation of General Statutes (Rev. to 1987) § 53a-54c, and kidnapping in the first degree in violation of General Statutes (Rev. to 1987) § 53a-92 (a) (2) (A).[5] The trial court, *Dewey, J.*, subsequently rendered judgment in accordance with the jury's verdict and sentenced the defendant to life without parole for the capital felony conviction, fifty years imprisonment for the murder conviction, twenty-five years imprisonment for the felony murder conviction, and twenty-five years imprisonment for the kidnapping conviction. The trial court ordered the sentences to run consecutively, for a total effective sentence of life without parole plus 100 years imprisonment.

The defendant appealed from the judgment of conviction to the Appellate Court, claiming, inter alia, that his cumulative convictions and sentences for capital felony, murder, and felony murder violated constitutional protections against double jeopardy because they arose from the killing of a single victim.[6] In his brief to the Appellate Court, the defendant asserted that, in accordance with *State* v. *Chicano*, 216 Conn. 699, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991), overruled in part by *State* v. *Polanco*, 308 Conn. 242, 261, 61 A.3d 1084 (2013), the appropriate remedy was to merge his murder and felony murder convictions into his controlling capital felony conviction, and to vacate his murder and felony

murder sentences. In its brief, the state agreed with the defendant's claim and his suggested remedy.

After briefing, but prior to the parties' oral argument before the Appellate Court, this court issued its decision in *Polanco*, which expressly overruled *Chicano* in part and held that when a defendant is convicted of greater and lesser included offenses in violation of double jeopardy protections, the conviction for the lesser included offense must be vacated—not merged. *State* v. *Polanco*, supra, 308 Conn. 255. The Appellate Court subsequently ordered the parties to be prepared to discuss at oral argument the potential impact of *Polanco* on the defendant's appeal. During oral argument before the Appellate Court, the parties agreed that, because murder is a lesser included offense of capital felony, the *Polanco* holding rendered it necessary to vacate the defendant's murder conviction. The parties disagreed, however, about whether *Polanco* also affected the defendant's felony murder conviction. The defendant contended that the vacatur remedy set forth in *Polanco* should logically extend to his felony murder conviction, whereas the state contended that the merger remedy set forth in *Chicano* remained viable because felony murder is not a lesser included offense of capital felony.

In a unanimous opinion, the Appellate Court first agreed with the parties' position that *Polanco* required it to vacate the defendant's murder conviction. *State* v. *Miranda*, supra, 145 Conn. App. 505–506. The Appellate Court then turned to the defendant's felony murder conviction, and observed that this court had stated in *Polanco* that it was not aware of any reason why the vacatur remedy should not be applied "with equal force to other scenarios in which cumulative convictions violate the double jeopardy clause . . . ." (Internal quotation marks omitted.) Id., 506, quoting *State* v. *Polanco*, supra, 308 Conn. 249 n.3. The Appellate Court disagreed with the state's proffered reason why the vacatur remedy should not extend to the defendant's felony murder conviction—namely that, unlike his murder conviction, it was uncertain whether his felony murder conviction could be reinstated if the controlling capital felony conviction was ever overturned on a ground that solely undermined the controlling conviction. *State* v. *Miranda*, supra, 506–507. Citing *State* v. *Polanco*, supra, 506–507, the Appellate Court concluded that, "if substituting a conviction of a lesser included offense is proper [when] the record establishes that the jury necessarily found, beyond a reasonable doubt, all of the essential elements required to convict the defendant . . . then, a fortiori, it is proper to reinstate a vacated conviction when the jury explicitly found the defendant guilty of the vacated offense." (Citation omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Miranda*, supra, 506–507. Accordingly, the Appellate Court reversed in part the trial court's judgment and remanded the case with direction to vacate the defen-

dant's convictions of murder and felony murder. Id., 520. This certified appeal followed. See footnote 2 of this opinion.

On appeal, the state claims that the Appellate Court improperly concluded that vacatur is the appropriate remedy for the defendant's cumulative felony murder conviction that violated his double jeopardy protections.[7] As an initial matter, the state acknowledges that, under Connecticut law, the imposition of cumulative punishments for the homicide offenses of capital felony and felony murder violates constitutional protections against double jeopardy if those offenses arise from the killing of a single victim. See, e.g., *State* v. *John*, 210 Conn. 652, 696–97, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989). Moreover, the state recognizes that, under the United States Supreme Court's decisions in *Ball* v. *United States*, 470 U.S. 856, 105 S. Ct. 1668, 84 L. Ed. 2d 740 (1985), and *Rutledge* v. *United States*, 517 U.S. 292, 116 S. Ct. 1241, 134 L. Ed. 2d 419 (1996), a cumulative conviction can be a form of punishment in and of itself because it may lead a defendant to suffer adverse collateral consequences.[8] With these concessions in mind, the state narrowly focuses its argument on the type of remedy that exists for the defendant's cumulative felony murder conviction.

Specifically, the state argues that "this court should limit the reach of *Polanco* to only [double jeopardy] scenarios involving greater and lesser included offenses . . . ." The state contends, and the defendant agrees, that the present case does not involve greater and lesser included offenses because "capital felony and felony murder each require proof of elements that the other does not."[9] Consequently, the state insists that *Chicano* still governs the defendant's case and "the appropriate remedy remains merger, rather than vacatur . . . ." Further, the state argues that maintaining the merger approach set forth in *Chicano* would avoid a risk that the defendant might "escape punishment entirely if he were to later succeed in reversing his controlling [capital felony] conviction," because it is uncertain whether the defendant's felony murder offense could ever be resurrected after being vacated.[10]

In response, the defendant argues that the Appellate Court properly concluded that the vacatur remedy set forth in *Polanco* extends to his cumulative felony murder conviction. Quoting *State* v. *Polanco*, supra, 308 Conn. 258, the defendant asserts that "the jurisprudential underpinnings to this court's approval of the merger approach in *Chicano* have . . . been repudiated," and that the merger approach "is now at odds with the remedy utilized almost uniformly by the Circuit Courts of Appeals." (Internal quotation marks omitted.) The defendant further contends that the state's concern of being unable to resurrect the felony murder conviction

is baseless. Noting that, in *Polanco*, this court expressly approved of the practice of resurrecting a vacated conviction of a lesser included offense in the event that a conviction for a greater offense is overturned on nonoverlapping grounds, the defendant argues that "the vacatur remedy is no more final than the merger remedy." (Internal quotation marks omitted.) The defendant asserts that there is no barrier to using this resurrection practice in other scenarios in which a controlling conviction is overturned for reasons that would not affect a conviction that previously had been vacated because of a double jeopardy violation. We agree with the defendant, and conclude that the Appellate Court properly determined that vacatur was the appropriate remedy for his cumulative felony murder conviction.

We begin by recognizing that, in *Polanco*, we invoked our supervisory powers to readopt vacatur as a remedy for a cumulative conviction that violated double jeopardy protections. *State* v. *Polanco*, supra, 308 Conn. 248–49, 255–56. We also provided a detailed history of this court's case law on remedies for violations of the double jeopardy protection against unauthorized multiple punishments, as well as the parallel evolution of such jurisprudence in the United States Court of Appeals for the Second Circuit and in the United States Supreme Court. See id., 249–54. We noted that, "[f]or several years prior to *Chicano*, it was this court's policy, when multiple punishments [were] imposed for the same offense . . . [to] set aside the judgment of conviction for one of the offenses, thereby vacating both the conviction and the sentence for that offense." (Internal quotation marks omitted.) Id., 249; see also *State* v. *John*, supra, 210 Conn. 696 ("[a]n indictment charging an accused with intentional and felony murder of a particular victim charges a single offense, committed conjunctively in two different ways" [internal quotation marks omitted]).

"In *Chicano*, which involved a defendant's cumulative convictions for felony murder and manslaughter in the first degree—a single crime for double jeopardy purposes—this court considered the state's request . . . to abandon its established vacatur remedy in favor of the Second Circuit's merger approach. . . . Relying exclusively on the reasoning [set forth in prevailing opinions from the Second Circuit at the time], this court ultimately was persuaded that the merger of convictions approach should be adopted. . . . Subsequently . . . this court . . . extended the merger remedy to cumulative convictions of greater and lesser included offenses." (Citations omitted.) *State* v. *Polanco*, supra, 308 Conn. 252–53.

"In *Rutledge* [v. *United States*, supra, 517 U.S. 292], the Supreme Court expressly found unpersuasive the policy rationale underlying the Second Circuit's adoption of the merger of convictions approach . . . the

very rationale on which this court had relied in *Chicano*. Following *Rutledge*, the Second Circuit repudiated the merger approach . . . ." (Citation omitted.) *State* v. *Polanco*, supra, 308 Conn. 258. Other jurisdictions adjusted where necessary, and "the remedy established in *Chicano* is now at odds with the remedy utilized almost uniformly by the Circuit Courts of Appeals." Id. As a result of these contemporary developments, in *Polanco*, this court readopted the vacatur remedy and, thereby, returned to our pre-*Chicano* approach, consistent with that of the federal system. Id., 259–60.

Although the holding in *Polanco* was limited to cases involving greater and lesser included offenses—in light of the issue presented—this court remarked in dictum that it was "aware of no reason why our holding, of logical necessity, would not apply with equal force to other scenarios in which cumulative convictions violate the double jeopardy clause . . . ." Id., 249 n.3. In the present appeal, we are confronted with one of those prophesied "other scenarios," for the defendant had been subjected to cumulative capital felony and felony murder convictions in violation of double jeopardy protections.

We conclude that the remedy set forth in *Polanco* should extend to scenarios like the defendant's, thus making it appropriate to vacate his cumulative felony murder conviction. To begin, our conclusion finds support in persuasive contemporary decisions of various Circuit Courts of Appeal. Although *Polanco* principally relied on federal appellate decisions that eschewed the merger remedy for greater and lesser included offenses; id., 258; federal appellate decisions have also eschewed the merger remedy in other contexts in which a defendant had been subjected to an unauthorized cumulative conviction. See *Wood* v. *Milyard*, 721 F.3d 1190, 1195–97 (10th Cir. 2013) (vacating unauthorized cumulative murder conviction, when each form of murder required proof of different element); see also *United States* v. *Britt*, 112 Fed. Appx. 352, 357–58 (5th Cir. 2004); *United States* v. *Locust*, 95 Fed. Appx. 507, 517–18 (4th Cir. 2004). It is fitting, then, to continue *Polanco*'s harmonization of our approach with that of the federal system. See *State* v. *Polanco*, supra, 308 Conn. 259–60. Analogously, by requiring usage of the vacatur approach beyond greater and lesser included scenarios, in "other scenarios in which cumulative convictions violate the double jeopardy clause"; id., 249 n.3; we promote internal consistency and eliminate the potential for confusion within our own state's judicial system.

Perhaps more importantly, although the merger approach of *Chicano* was intended as a remedy for all manner of unlawful cumulative convictions; see *State* v. *Chicano*, supra, 216 Conn. 722–25; that remedy has proven unwieldy in practice. In *Polanco*, this court noted that "at oral argument . . . there was some ques-

tion as to how a conviction for a lesser included offense, which has been merged with a conviction on the greater offense, appears on a defendant's criminal record. On the basis of the state's representations, it appears that there has been some inconsistency among our judicial districts on how courts memorialize the conviction for the lesser offense. Still, it is clear that the conviction appears, in at least some capacity and in some instances, on the criminal record." *State* v. *Polanco*, supra, 308 Conn. 260 n.10; see also *Ball* v. *United States*, supra, 470 U.S. 865 ("[a] second conviction [for the same offense], even if it results in no greater sentence, is an impermissible punishment").

These inconsistent results are not altogether surprising, and the present appeal illustrates just how challenging it can be to implement the merger approach.[11] Indeed, the state's acknowledgment at oral argument before this court that the violative cumulative conviction "is not eliminated from existence"[12] under the merger approach seems confusingly incongruent with its brief, which asserts that felony murder "would not exist as a separate conviction" for the defendant if it were merged. To this end, in scenarios not involving greater and lesser included offenses, the mechanics of the merger arrangement are particularly confounding, because by definition one conviction could not nest entirely inside the other.[13]

In sum, we are not convinced that the opaque remedy of merger can be implemented in a manner that consistently protects defendants from the potential collateral consequences of having an unauthorized cumulative homicide conviction. See *Rutledge* v. *United States*, supra, 517 U.S. 302. Instead, "we think it wise to adhere to an approach that the federal courts seem to conclude is *less* likely to give rise to collateral consequences," namely, the vacatur approach. (Emphasis in original.) *State* v. *Polanco*, supra, 308 Conn. 256 n.5. Extending this vacatur remedy beyond scenarios involving greater and lesser included offenses will therefore promote inter-jurisdictional and intra-jurisdictional harmony, and better safeguard against unconstitutional multiple punishments.

Because we think it is appropriate to continue to end our use of the merger approach, we briefly address the state's concern that the defendant might "escape punishment entirely if he were to later succeed in reversing his controlling [capital felony] conviction." Generally, we see no substantive obstacle to resurrecting a cumulative conviction that was once vacated on double jeopardy grounds—provided that the reasons for overturning the controlling conviction would not also undermine the vacated conviction. See, e.g., *United States* v. *Silvers*, 90 F.3d 95, 99 (4th Cir. 1996) ("[t]his practice [of reinstating a previously vacated conviction] does not violate the [d]ouble [j]eopardy [c]lause

because, in essence, the defendant is not subjected to multiple punishment; rather, he is placed in exactly the same position in which he would have been had there been no [erroneous conviction of the controlling offense] in the first instance"). This holds true regardless of whether the previously vacated conviction was for a lesser included offense of the controlling conviction, or was cumulative in some other manner. In either instance, a jury necessarily found that all the elements of the cumulative offense were proven beyond a reasonable doubt. Put differently, although the cumulative conviction goes away with vacatur, the jury's verdict does not.[14]

On this point, the experience of the State of Washington is especially illustrative. In the case underlying *State v. Schwab*, 163 Wn. 2d 664, 669, 185 P.3d 1151 (2008) (en banc), a defendant was convicted of second degree felony murder and first degree manslaughter in connection with the killing of a single victim. On direct appeal, those cumulative homicide convictions were held to be a double jeopardy violation, leading the Washington Court of Appeals to remand the case with direction for the trial court to vacate the first degree manslaughter conviction. Id. Later, on collateral review, the same defendant succeeded in overturning his remaining second degree felony murder conviction in light of intervening case law. Id., 670. As a result, that defendant's collateral review petition was granted, and his case was remanded to the trial court for additional proceedings. Id. On remand, the trial court determined that there was no bar to reinstating the vacated first degree manslaughter conviction, and the Washington Court of Appeals thereafter upheld that judgment. Id., 670–71. The Supreme Court of Washington subsequently concluded that this series of events complied with specialized court rules of that state, as well as double jeopardy protections more broadly. Id., 673–76. It specifically opined that "revival of the [vacated] manslaughter conviction would serve the interest of justice"; id., 674; without raising a double jeopardy concern. Id., 676; see also id., 674–75 (reasoning abeyance, conditional dismissal, or automatic revival of cumulative conviction would have been improper).

Moving beyond this illustration of how a vacated homicide conviction might later be reinstated, we return to the present case. We emphasize that, even if the defendant's controlling capital felony conviction were to be overturned on limited grounds, it would not necessarily follow that he would escape all punishment for homicide—so long as the form of judgment reflected the jury's verdict with respect to each of the cumulative homicide convictions and indicated that the court had vacated those cumulative homicide convictions in light of the controlling capital felony conviction. One of the cumulative convictions could be reinstated so long as the defect in the overturned controlling conviction was

not shared with that cumulative conviction. As one example, if this defendant's capital felony conviction was ever overturned because the underlying kidnapping was called into question, the conviction of the lesser included offense of murder could be reinstated.[15] See *State* v. *Polanco*, supra, 308 Conn. 263; see also General Statutes (Rev. to 1987) § 53a-54b (5) (capital felony if kidnapper murders his kidnapping victim). As a second example, if the defendant's capital felony conviction was ever overturned because his underlying intent to cause the death of the victim was called into question, the coordinate conviction of the offense of felony murder could be reinstated. Compare General Statutes (Rev. to 1987) § 53a-54b (capital felony requires murder), with General Statutes (Rev. to 1987) § 53a-54a (a) (murder requires intent to cause death of victim), and General Statutes (Rev. to 1987) § 53a-54c (felony murder requires no intent to cause death of victim). In either instance, after reinstating a once vacated homicide conviction, the trial court would proceed to sentence the defendant for that offense, which, in turn, would have the effect of activating the defendant's right to challenge the new judgment on any basis unconnected to the overturned conviction. See *In re Application for Writ of Habeas Corpus by Dan Ross*, 272 Conn. 653, 662–63, 866 A.2d 542 (2005) (recognizing that, pursuant to collateral estoppel doctrine, parties that had "fair and full opportunity to litigate" legal issue could not litigate same issue again in another proceeding).

Finally, we do not attempt to address every possible question that could arise from cases where cumulative convictions have been imposed in violation of double jeopardy protections, and limit our analysis to the cumulative homicide convictions presently before us. Moreover, "[t]o the extent that the creation of generally applicable rules on this topic are necessary or appropriate, that responsibility is left to the Rules Committee of the Superior Court, which is vested with the power to establish rules of procedure for our trial courts." *State* v. *Jones*, 314 Conn. 410, 425, 102 A.3d 694 (2014). Accordingly, we conclude that the Appellate Court properly determined that the trial court was required to vacate the defendant's convictions of murder and felony murder.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] "The double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb. The double jeopardy clause [applies] to the states through the due process clause of the fourteenth amendment. . . . This constitutional guarantee prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense in a single trial." (Internal quotation marks omitted.) *State* v. *Polanco*, supra, 308 Conn. 244 n.1; see also *Ball* v. *United States*, 470 U.S. 856, 865, 105 S. Ct. 1668, 84 L. Ed. 2d 740 (1985) ("the second conviction [for the same offense], even if it results in no greater sentence, is an impermissible punishment").

By comparison, "[t]he constitution of Connecticut does not contain an

express prohibition against double jeopardy. Instead, we repeatedly have held that the due process guarantees, presently encompassed in article first, § 8, of the Connecticut constitution, include protection against double jeopardy." *State* v. *Michael J.*, 274 Conn. 321, 350, 875 A.2d 510 (2005). Our state constitution offers double jeopardy protection that mirrors, but does not exceed, that provided by the federal constitution. Id., 354.

[2] We granted the state's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly apply *State* v. *Polanco*, [supra, 308 Conn. 242], which held that the appropriate remedy for cumulative convictions of greater and lesser included offenses arising from the same incident is to vacate the conviction for the lesser offense, to cumulative homicide convictions arising from the killing of a single victim?" *State* v. *Miranda*, 310 Conn. 942, 942–43, 79 A.3d 894 (2013).

[3] A detailed review of the facts underlying the present case is set forth in the opinion of the Appellate Court. See *State* v. *Miranda*, supra, 145 Conn. App. 497–501.

[4] General Statutes (Rev. to 1987) § 53a-54b provides in relevant part: "A person is guilty of a capital felony who is convicted of any of the following . . . (5) murder by a kidnapper of a kidnapped person during the course of the kidnapping or before such person is able to return or be returned to safety . . . ."

[5] We note that each of these statutes has been amended by the legislature subsequent to the criminal acts underlying the present case. See, e.g., Public Acts 2012, No. 12-5, § 1; Public Acts 1992, No. 92-260, § 26. We note that these amendments have no bearing on the merits of the present appeal. Hereinafter, all references to §§ 53a-54a, 53a-54b, 53a-54c and 53a-92 within this opinion are to the 1987 revision.

[6] The defendant did not raise a double jeopardy claim in connection with his conviction and sentence for kidnapping.

[7] The state does not challenge any of the Appellate Court's conclusions with respect to the cumulative conviction of murder.

[8] We note that the state has not raised the issue regarding collateral consequences that was conspicuously avoided in *Rutledge*. See *Rutledge* v. *United States*, supra, 517 U.S. 302–303 (declining to explore argument that defendant sentenced to life without parole would "never be exposed to collateral consequences like those described in *Ball*" because defendant still faced $50 assessment for cumulative conviction); see also *State* v. *Polanco*, supra, 308 Conn. 254 (discussing this aspect of *Rutledge*).

[9] Because the parties agree that capital felony and felony murder each "require proof of elements that the other does not," we will assume, without deciding, that the convictions in this particular case were not for greater and lesser included offenses. See, e.g., *Brown* v. *Ohio*, 432 U.S. 161, 168, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977) (lesser included offense requires "no proof beyond that which is required for conviction of the greater").

[10] Additionally, the state claims that the trial court improperly sentenced the defendant to life "without parole" for his controlling capital felony conviction and asks us to correct the form of the judgment. Citing General Statutes § 53a-35a (1) (A), the state asserts that, in a capital felony case where the death penalty is not imposed, the only permissible sentence is life "without the possibility of release . . . ." While the state is correct in a literalistic sense, it has identified a distinction without a difference. The terms of life "without parole" and life "without the possibility of release" are functionally identical in Connecticut. See General Statutes § 54-125a (b) (1) ("[n]o person convicted of any of the following offenses . . . shall be eligible for parole . . . [A] [c]apital felony"); see also *State* v. *Ross*, 230 Conn. 183, 302 n.16, 646 A.2d 1318 (1994) (*Berdon, J.*, dissenting in part) ("If the penalty of death were declared unconstitutional, the alternative sentence in Connecticut that would be in place for the conviction of a capital felony under . . . § 53a-54b would be 'a sentence of life imprisonment *without the possibility of release.*' . . . This simply means life imprisonment without the possibility of parole . . . ." [Emphasis in original.]), cert. denied, 513 U.S. 1165, 115 S. Ct. 1133, 130 L. Ed. 2d 1095 (1995). Because these terms are functionally identical, and the state has not provided any substantive reason why we should direct the trial court to revise the form of the defendant's existing capital felony sentence in this respect, we decline its request to do so.

[11] Even celebrated jurists have found the merger concept vexing. See, e.g., *United States* v. *Estrada*, 751 F.2d 128, 135 (2d Cir. 1984) (Kearse, J., concurring) ("It is not clear to me . . . what the precise effect is of 'join[ing]' or 'combin[ing]' the convictions . . . . I believe it would have been appropriate to vacate the [cumulative] convictions . . . . I do not know what

[the merger remedy] means ontologically . . . .” [Citations omitted.]).

[12] We refer to the following colloquy in particular:

“[The Court]: How would it happen in the merger context?

“[Counsel for the State]: In the merger context, it would just happen in the same way that it’s been happening . . . .

“[The Court]: But what happens?

“[Counsel for the State]: The conviction . . . is not eliminated from existence . . . it’s just kind of held in abeyance . . . .”

[13] Cf. J. Shellenberger & J. Strazzella, “The Lesser Included Offense Doctrine and the Constitution: The Development of Due Process and Double Jeopardy Remedies,” 79 Marq. L. Rev. 1, 131 n.450 (1995) (“[i]n this sense [of merging greater and lesser included offenses], the meaning is that the lesser becomes part of the conviction for the whole; a conviction for all the elements of the greater is automatically a conviction of the crime comprised entirely of elements necessarily included in the greater”).

[14] Thus, we remain unpersuaded by the state’s contention that the vacatur remedy returns a defendant “to his pretrial status of innocence,” an argument we rejected in *Polanco*, nearly verbatim. See *State* v. *Polanco*, supra, 308 Conn. 260 n.11 (“[i]t appears that the state is concerned that, if we were to apply . . . the vacatur approach, vacating a defendant’s conviction for a lesser included offense would amount to a reversion of his or her status to presumptively innocent, a result that would be wholly inconsistent with the verdict of guilty actually rendered”).

[15] Given our conclusion that vacatur is the appropriate remedy for a cumulative homicide conviction that violates double jeopardy protections, we note that, in future cases involving felony murder, it may be a better practice to obtain jury interrogatories that identify which predicate felony served as the basis for a jury’s felony murder verdict if the charging documents and the record indicate multiple potential bases for that verdict. Cf. *State* v. *Terwilliger*, 314 Conn. 618, 637, 104 A.3d 638 (2014) (reviewing courts “avoid undue speculation when faced with a general jury verdict that convicts the defendant of a single offense but is ambiguous as to the specific theory on which the jury relied in rendering its verdict”).